STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

*v.*

AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA

(No. 12482)

Submitted February 1, 1966.     Decided March 1, 1966.

436

*Jackson, Kelly, Holt & O'Farrell, William T. O'Farrell, Edwin B. Brown,* for appellant.

*Kay, Casto & Chaney, Edward H. Tiley, Ralph C. Dusic, Jr.,* for appellee.

CALHOUN, JUDGE:

This case, on appeal from a final judgment of the Circuit Court of Kanawha County, involves primarily the question whether the driver of an automobile, at the time it was involved in an accident, was using the automobile with the permission of the owner who was the "named insured" within the meaning of the "omnibus clause" of an automobile liability insurance policy. There was no express permission and so, stated more precisely, the question is whether the factual circumstances warrant the trial court's finding of implied permission.

The case in the trial court involved a declaratory judgment action instituted in that court by State Farm Mutual Automobile Insurance Company, a corporation (which will be referred to in this opinion as State Farm), against American Casualty Company of Reading, Pennsylvania, a corporation (which will be referred to in this opinion as American Casualty), and R. E. Clark. R. E. Clark was American Casualty's insured.

On the evening of July 27, 1962, R. E. Clark gave permission to his son, James Clark, to use his automobile. James Clark, in company with Paul Jefferson, Jr., and a third boy named Richard McCullough, drove the automobile to the Mantiki Club on U. S. Route 60 in Charleston, Kanawha County. At that time and place James Clark turned the automobile over to Paul Jefferson, Jr., in order that the latter might drive the automobile to a service

station to purchase gasoline for the automobile. In the meantime, James Clark and Richard McCullough went into the Mantiki Club. While the Clark automobile was being driven by Paul Jefferson, Jr., for the purpose of obtaining gasoline, it was involved in a collision with an automobile owned by Carl Walker, in which he was a passenger, while the automobile was being operated by his wife, Retta Walker.

As a consequence of the accident involving the two automobiles, the Walkers instituted, in the Court of Common Pleas of Kanawha County, a civil action for recovery of damages. During the course of the trial R. E. Clark and James Clark were dismissed as defendants and the case proceeded to verdicts and judgments against Paul Jefferson, Jr. The verdict in favor of Retta Walker was for $4,000 and the verdict in favor of Carl Walker was for $2,000. State Farm defended Paul Jefferson, Jr., in the civil action under the terms of the policy it had formerly issued to Paul Jefferson, Sr. The judgments entered on the verdicts were later paid by State Farm on the basis of a $5,000 settlement.

In the declaratory judgment action thereafter instituted by State Farm against American Casualty and R. E. Clark, State Farm requested the trial court (1) to declare its rights in relation to both insurance policies; (2) to declare that American Casualty was primarily liable for damages which resulted to the Walkers as a consequence of the automobile accident; and (3) that the court enter judgment in favor of State Farm against American Casualty for $5,000, plus interest, costs and reasonable attorney fees incurred by State Farm in defending Paul Jefferson, Jr., in the civil action for recovery of damages.

The declaratory judgment action was submitted to the trial court for decision upon the complaint, an answer, sample copies of the two insurance policies and certain pertinent testimony which had been adduced in the previous action instituted by the Walkers for recovery of damages. The circuit court held in the declaratory judgment action that Paul Jefferson, Jr., at the time the accident occurred,

was operating the automobile with the implied permission of R. E. Clark, owner of the automobile and the named insured in the policy issued to him by American Casualty; that, as between the two insurers, American Casualty was primarily liable for damages caused to the Walkers by the accident; and, accordingly, the circuit court entered judgment in favor of State Farm against American Casualty for the sum of $5,000, plus interest, costs and attorney fees in the sum of $1,600.06. Counsel for American Casualty made a motion to the court to amend certain of its findings of fact and conclusions of law or, in the alternative, to grant a new trial. From an order of the circuit court overruling the motion, American Casualty has been granted the appeal to this Court.

It is agreed by counsel in briefs and oral argument that the issue presented on the appeal to this Court is whether, at the time the automobile accident occurred, Paul Jefferson, Jr., was operating the automobile with the implied permission of R. E. Clark, owner of the automobile and the "named insured" in the insurance policy issued to him by American Casualty. It is agreed also that the pertinent portion of the American Casualty policy is the "omnibus clause" contained in the following language:

"Persons Insured. The following are insureds under Part I:
" (a)   With respect to the owned automobile,

" (1)   the named insured and any resident of the same household,

" (2)   any other person using such automobile, *provided the actual use thereof is with the permission of the named insured; * * *.*" (Italics supplied.)

The record contains testimony of only three witnesses: R. E. Clark, James B. Clark and Paul Jefferson, Jr. There appears to be no substantial controversy concerning the facts and circumstances bearing upon the issue of implied permission. Apparently there was a close, friendly relationship between the Clark family and the Jefferson family, particularly between the two sons who are involved in this

case. The Clark automobile was used quite generally for family purposes.

R. E. Clark, the named insured, testified that his son had used the automobile theretofore if nobody else was using it, apparently on numerous occasions, but by asking and obtaining permission to do so from either his father or his mother. The father testified further that he was aware of the fact that, on some of such occasions, Paul Jefferson, Jr., and others of his son's friends had ridden with him in the automobile. When asked whether he never denied permission to his son to use the automobile when nobody else was using it, the father testified: "Well, in the absence of some disciplinary reason or some other reason that is probably true." When asked if his son could use the automobile without express permission if neither of his parents was at home, R. E. Clark, the named insured, replied: "Yes, he would feel free to take it if neither one of us is there or not and there is usually someone there." Perhaps this particular testimony is of quite limited relevancy because there is no question about the fact that James B. Clark, the son, had express permission from his father, the named insured, to use and drive the automobile during the evening in question in this case.

On the evening in question R. E. Clark had given his son permission to use the family automobile. Both the father and the son testified that repeatedly the son had been expressly forbidden by his father to permit any other person to drive the automobile without the permission of R. E. Clark, the named insured, or his wife, and that the son had not been authorized to permit Paul Jefferson, Jr., to drive the automobile on the night in question in this case. On at least one occasion before the night in question, the named insured or his wife had given permission to Paul Jefferson, Jr., to drive the Clark automobile, apparently to Jefferson's home and back to the Clark home.

Clark and McCullough entered the Mantiki Club but Jefferson was not permitted to enter because he was under eighteen years of age. In these circumstances Clark gave Jefferson the keys for the automobile and two dollars in

order that Jefferson might drive somewhere to get gasoline for the automobile. One of the two dollars was contributed by Clark and the other by McCullough. Apparently it was understood that Jefferson also would contribute money toward the proposed purchase of gasoline.

Both R. E. Clark, the named insured, and his son testified that the father "repeatedly" had told the son not to permit any other person to drive the automobile. Nevertheless, it appears without contradiction that on the night in question James B. Clark did give permission to Jefferson to drive the automobile somewhere to buy gasoline. The three young men had planned, after leaving the Mantiki Club, to go to the home of a girl who was a friend of one or more of them, and thereafter, according to the testimony of one of them, they "were just going to mess around." The three young men had planned to remain together during the course of the evening.

In deciding the issue of implied consent in the declaratory judgment action, the trial court, in its written opinion which has been made a part of the record, found from the testimony that "R. E. Clark had frequently admonished his son, James Clark, not to permit others to operate or use the car." The trial court nevertheless found "as a fact that Paul Jefferson, Jr., was, at the time of the accident, operating the vehicle with the implied permission of R. E. Clark within the meaning of the omnibus clause of the insurance policy." In making that finding of fact, the trial court, in its written opinion, emphasized the following factors: (1) The Jefferson boy, on at least one prior occasion, used the Clark automobile with the permission of R. E. Clark, the named insured; (2) at the time of the accident, the mission of the second permittee, Paul Jefferson, Jr., was to purchase gasoline so that the boys could continue, "an evening excursion, a use which I find, as a matter of fact, was not contrary to the intended purpose for which the car was to be used by James, or a deviation therefrom;" (3) the "close personal relationships involved;" (4) "the broad general use granted to the first permittee, James Clark;" and (5) "the fact that the operation of the vehicle by the second permittee was merely incidental to the

general use." In the opinion, the trial court determined as a matter of law that, as between the two insurers, American Casualty was primarily liable for damages caused to the Walkers as a result of the accident.

It is fundamental that this Court will give due weight to findings of fact made by a trial court in a case tried by it without a jury. This general principle, substantially as it was recognized before the promulgation of the Rules of Civil Procedure, has been embodied in R. C. P. 52 (a) in the following language: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the *opportunity of the trial court to judge of the credibility of the witnesses.*" (Italics supplied.) The rule which accords weight to findings of fact made by trial courts sitting in lieu of juries is applied with greater force in cases in which testimony of witnesses has been heard *ore tenus* by the trial court. "When the material facts are in dispute, as here, the findings of the trial chancellor who heard the testimony of the witnesses and observed their demeanor while testifying should not be disturbed on appeal." *Taylor* v. *Taylor,* 128 W. Va. 198, 210, 36 S. E. 2d 601, 607. See also *Forbes* v. *Haney,* 204 Va. 712, 715, 133 S. E. 2d 533, 535. "The chancellor's appraisal of testimony taken in his presence is entitled to special respect." *Napper* v. *Rice,* 127 W. Va. 157, 165, 32 S. E. 2d 41, 45. To the same effect, see *Farley* v. *Farley et al.,* 136 W. Va. 598, 610, 68 S. E. 2d 353, 361. "The rule that appellate courts will not ordinarily review fact issues decided below is probably based largely on the advantage which the trier of fact below has in observing the demeanor of the testifying witness while the testimony is being given, the idea being that such observation permits a more informed judgment of veracity and capacity than can be made by the appellate court from the cold pages of the record. This advantage does not operate where the evidence is entirely in the form of documents which come up with the record and accordingly the appellate courts have sometimes held that issues of fact are open for review on appeal where the findings below are based entirely on documentary evidence, such as written affidavits, or depositions." 5 Am. Jur. 2d, Appeal and Error,

Section 823, page 264. To the same effect, see also 5A C. J. S., Appeal & Error, Section 1660, page 575; Anno., 111 A. L. R. 742; *Martin* v. *Martin*, 202 Va. 769, 773, 120 S. E. 2d 471, 474; *Brewer* v. *Brewer*, 199 Va. 753, 755, 102 S. E. 2d 303, 305. "There appears to be no question that the rule loses much of its force, the principal basis of the rule ceases to exist, when it is made to appear, as in the instant case, that the trial judge did not hear or observe the witnesses testify." *The Committee on Legal Ethics of the West Virginia State Bar* v. *Pietranton*, 143 W. Va. 11, 32, 99 S. E. 2d 15, 27. Notwithstanding the legal principles referred to immediately above, the Court has held: "If a decree is based upon depositions which are so conflicting and of such doubtful and unsatisfactory character that different minds and different judges might reasonably reach different conclusions as to what the real facts deducible from them are, an appellant court will not reverse it, though such court might have rendered a different decree had it acted in the cause in the first instance." *Ross et al.* v. *McConnaughy et al.*, 85 W. Va. 199, pt. 1 syl., 101 S. E. 443. To the same effect, see *Poling* v. *Bennett*, 103 W. Va. 456, pt. 2 syl., 137 S. E. 883; *Martin et al* v. *Williams et al.*, 141 W. Va. 595, pt. 2 syl., 93 S. E. 2d 835, 56 A. L. R. 2d 756.

We believe that the rule which accords weight in an appellate court to findings of fact made by a trial court loses some of the force normally attached to that rule when applied to the present case because of the fact that the witnesses upon whose testimony the findings of fact were based did not testify in person in the circuit court and also because of the fact that there is little dispute, if any, in the testimony bearing upon the issue of implied consent. The trial court was warranted in drawing reasonable inferences from the evidence, even to the extent that the evidence was undisputed. We are of the opinion, however, that in a great measure the decision of this case calls for a proper application of legal principles to facts which are without substantial dispute.

Previous decisions of this Court are of quite limited value in the decision of the present case. *Collins* v. *New*

*York Casualty Co.*, 140 W. Va. 1, 82 S. E. 2d 288, was a case in which the person designated as the named insured in an insurance policy gave express permission to another to drive his automobile to a certain city and to return the automobile to the owner, the named insured, within an hour. The permittee drove the automobile beyond the specified city, "on a frolic of his own." The question was whether the permittee was "an additional insured" within the meaning of the omnibus clause at the time he was involved in an automobile accident while operating the automobile at a place and at a time beyond the scope of the permission granted to him. The Court held that a slight deviation from the scope of the permission would not defeat coverage; but, in the fifth point of the syllabus, the Court held that the permittee was not "an additional insured" within the meaning of the omnibus clause of the policy because, at the time of the accident, he had materially deviated from the scope of permission "by driving the automobile for a purpose and beyond the time and geographical limits to which the insured would not have assented when he parted with possession of the automobile." In the body of the opinion (140 W. Va. 12, 82 S. E. 2d 295), the Court stated: "Because the purpose of an omnibus clause in an automobile public liability insurance policy is not to limit the insurer's liability, but to provide additional coverage, the clause is designed to protect not only those entrusted with the use of the automobile, but the public in general, and therefore the provisions of the clause should be liberally applied to effectuate the purpose for which it was incorporated in the policy." Though holding that the omnibus clause should be liberally applied, the Court declined to apply an extreme rule, commonly referred to as "The Hell or High Water Rule," which has been stated as follows: "A number of states have apparently felt that even an ordinary automobile liability insurance contract is as much for the benefit of the members of the public as for the benefit of the named or additional insured. Therefore, upon an injury occurring they have felt it undesirable to permit litigation as to the use made of the vehicle, the scope of permission, purposes of the bailment, and the like.

These states have arbitrarily adopted a doctrine that if the vehicle was originally entrusted by the named insured, or one having proper authority to give permission, to the person operating it at the time of the accident, then despite hell or high water, such operation is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated." 7 Appleman, Insurance Law and Practice (1962 Ed.), Section 4366, page 308. See also 31 Journal of American Trial Lawyers Association (1965), page 86.

In *Helvy* v. *Inland Mutual Insurance Company,* 148 W. Va. 51, 132 S. E. 2d 912, the Court held that where the owner of a truck, the named insured in an insurance policy, leased the insured truck to one who, by an employee, was operating the truck at the time it was involved in an accident, the operation of the truck was with the permission of the named insured and therefore was covered by the omnibus clause of the policy. In the same case, the Court cited *Collins* v. *New York Casualty Company, supra,* for the proposition that the omnibus clause was ' clear and unambiguous, not subject to judicial interpretation, but that it should be liberally applied in order to effectuate the purpose for which it was inserted in the policy. In *Lewis* v. *Dils Motor Co. et al.,* 148 W. Va. 515, 135 S. E. 2d 597, the holding of the Court is summarized in the fifth point of the syllabus as follows: "An automobile liability insurance policy which includes in a definition of the word 'insured' any employee of the named insured while acting within the scope of his duties as such and any person while using an automobile covered by the policy, provided the actual use of the automobile is with the permission of the named insured, embraces within such definition and covers an employee of the named insured while actually using the automobile with the permission of the named insured, whether such use be within or without the scope of his employment." It is apparent that none of the prior decisions of this Court cited in this opinion involved the question of implied permission of the named insured arising from the entrustment of a motor vehicle by a permittee of the named insured to a third person.

In *Adkins* v. *Inland Mutual Insurance Company,* 124 W. Va. 388, 20 S. E. 2d 471, the automobile in question was owned by Earl Canterbury though the insurance policy, which designated Earl Canterbury as the owner and the named insured, had been obtained by his brother, James Canterbury, who paid the insurance premiums. The operator's or driver's license of James had been revoked because he had been convicted of the offense commonly referred to as drunken driving. He had obtained a new operator's license, pursuant to the Financial Responsibility Act, but the new operator's license restricted his driving to the automobile in question which was registered in the name of his brother, Earl. The insurance policy included coverage where "the actual use is with the permission of the named insured." The Court held that Earl Canterbury was the "named insured" within the meaning of the policy. On the occasion in question, James Canterbury was operating the automobile with the permission of his brother, the named insured. During such operation, Thomas Coffman was riding as a guest passenger in the automobile. The automobile was regularly kept at the Canterbury home, where both Earl and James resided. Coffman had driven the automobile on several previous occasions and frequently had been a guest passenger while the automobile was being driven by James. On the day in question, James, with Thomas Coffman as his guest passenger, drove to a point where he stopped the automobile near a certain drug store. Coffman entered the drug store and when he returned to the automobile five or ten minutes later, he found James in an intoxicated condition and asleep or "passed out." Coffman told James he would drive the automobile to the Canterbury home. Receiving an unintelligible reply from James, Coffman proceeded to drive the automobile and, after having driven about two hundred yards, the automobile was involved in an accident in which Vercie Hall Adkins was injured. She recovered a verdict for $5,000 against Coffman, upon which judgment was rendered. Vercie Hall Adkins instituted an action against Inland Mutual Insurance Company, Earl Canterbury's insurer, in which she asserted that damages for the injuries she sus-

tained were covered by the omnibus clause of the insurance policy. There is nothing in the case to indicate that Coffman's operation of the automobile on the occasion in question was with the express permission of Earl Canterbury, the named insured, though, as we have stated previously, Coffman had driven the automobile on numerous occasions theretofore. The insurance company's defense was that Coffman had no permission, express or implied, from the named insured to operate the automobile. It was contended in behalf of the plaintiff that, as a matter of fact, James Canterbury was the owner of the automobile and the named insured in the policy. The Court rejected the plaintiff's contention and, as we have stated previously, held that Earl Canterbury was the named insured. Two of the five members of the Court in a dissenting opinion (124 W. Va. 394, 20 S. E. 2d 663), contended: (1) That, as a matter of fact, James Canterbury was the named insured or, alternatively, (2) that Coffman was driving the automobile with the implied authorization or permission of Earl Canterbury, the named insured. In rejecting plaintiff's contention and the contention made in the dissenting opinion, the three judges who constituted the majority, speaking for the Court, held (124 W. Va. 393, 20 S. E. 2d 473): " 'Named Insured', as used in this policy, can refer to but one person, Earl Canterbury, and since the record includes his undisputed testimony that he did not give Coffman permission to operate the automobile, we must hold that the actual use thereof at the time of the accident was without the permission of the named insured. Because Earl's testimony on this point is undisputed, the lower court did not err in refusing the defendant in error's instruction No. 1, which, as originally offered, would have submitted to the jury the question of whether Coffman was driving with Earl's permission." Implicit in the Court's decision in this case, we believe, is a holding that the circumstances did not warrant submission to the jury of the issue of implied permission by the named insured to Coffman to drive the automobile. So far as we have been able to ascertain, this is the only prior decision of this Court directly bearing

upon the question of implied permission in a case such as that presently under consideration.

From the multitude of court decisions, it is difficult to formulate general or inflexible legal principles concerning coverage under omnibus clauses, like or similar to that involved in the present case, in situations in which one driving a motor vehicle with the express permission of the named insured has given a third person permission to drive the automobile covered by the insurance policy. In *Nationwide Mutual Insurance Company* v. *State Farm Mutual Automobile Insurance Company et al.*, 209 F. Supp. 83 (N. D. W. Va. 1962), the court summarized the reported decisions in two general rules or categories. The court stated that "The first classification concerns factual situations in which the owner has entrusted the car to the first permittee to use virtually as his own, without restrictions as to the times or manner of use. * * * These cases imply authorization or permission from the owner to the driver." The court summarized the second general rule as follows: "The second main line of cases involves factual situations in which the authority of the first permittee was less general, and in certain of them where he had been specifically denied authority to let others drive, but in which the purpose for which the car was being used was within the specific permission and the first permittee was in the car at the time of the occurrence. The opinions in many of these cases take large comfort from the language of Judge Cardozo in the case of Grant v. Knepper, 245 N. Y. 158, 156 N. E. 650, 54 A. L. R. 845 (1927), to the effect that the first permittee, remaining in the car, was still 'master of the ship', 'director of the enterprise' and similar language." Referring to the *Adkins* case decided by this Court and discussed immediately above, the court stated: "In this case, although the first permittee was in the car at the time of the accident, he was in a 'passed out' condition from intoxication, and the court found that the elements of direction and control necessary to bring the case within the second line of decisions hereinbefore discussed, were lacking and denied coverage."

In an annotation in 160 A. L. R. 1195 dealing with the subject of coverage under omnibus clauses in relation to accidents involving third persons driving motor vehicles with the consent of permittees of persons designated as named insureds, four general rules are stated as follows: (1) Coverage will be afforded where the permittee of the named insured has been given express authority to permit third persons to drive the motor vehicle; (2) coverage will be denied where the first permittee has been expressly forbidden by the named insured to delegate authority to another to drive but the first permittee, in violation of that prohibition, permits a third person to drive the motor vehicle; (3) coverage will be denied where the original permission from the named insured is silent as to the question of delegation of authority but the permittee of the named insured nevertheless gives permission to a third person to drive the motor vehicle; and (4) the initial permission by the named insured to the original permittee includes the use of the motor vehicle by a second permittee, where, in doing so, the second permittee serves some purpose, benefit or advantage of the first permittee; and this is the case where the original permittee is riding in the vehicle or if it is being driven in his interest or for a purpose mutual to him and the second permittee.

The annotation in 160 A. L. R. 1195 to which we have referred previously has been superseded by a very exhaustive annotation in 4 A. L. R. 3d 15 (1965), in connection with which pertinent decisions of appellate courts throughout the country have been thoroughly collected and categorized. In the following additional authorities, pertinent decisions have been assembled and analyzed and formulation of general principles has been undertaken. 7 Am. Jur. 2d, Automobile Insurance, Section 109, page 420, particularly Section 116, page 431; 45 C. J. S., Insurance, Section 829c, page 892 *et seq.;* 7 Appleman, Insurance Law and Practice (1962 Ed.), Section 4365, page 300 *et seq.;* and 5 A. L. R. 2d 600. Inasmuch as pertinent cases from other jurisdictions have been so exhaustively collected in the several authorities previously referred to, we will not burden or further lengthen this opinion by a specific reference to or an ex-

tended listing of decisions of appellate courts of other jurisdictions. Rather we will undertake in the concluding portion of this opinion to point out the absence from the instant case of factors which have been generally held, whether singly or in combination, to warrant holdings of coverage under the omnibus clause of insurance policies in cases involving accidents which occurred while motor vehicles were being driven by third persons with the permission of persons who had been given express permission by the owner and named insured to drive the vehicles.

The burden of proof was on State Farm in the trial court to prove liability of American Casualty. "It appears to be well settled that the plaintiff bears the burden of proof to show that permission actually existed under the facts and circumstances of the case." 5 A. L. R. 2d at 666, Anno. "The general rule of evidence, that the burden of proving a particular issue or of proving an entire action is upon the person who will be defeated if no evidence relating thereto is given on either side, is fully applicable to actions upon insurance policies; * * *." 29 A Am. Jur., Insurance, Section 1837, page 902. See also *Lambert* v. *Metropolitan Life Insurance Co.,* 123 W. Va. 547, pt. 1 syl., 17 S. E. 2d 628; *Davis* v. *Combined Insurance Company of America,* 137 W. Va. 196, pt. 3 syl., 70 S. E. 2d 814; 46 C. J. S., Insurance, Section 1316b (1), page 393. The same principles apply where a party seeks in a declaratory judgment action to establish liability under the provisions of an insurance policy. "It has been stated in insurance cases as a general rule that the burden of proof in a declaratory judgment action rests where it would have rested had a different type of suit been brought. Accordingly, in insurance cases, the general rules dealing with the burden of proof in such cases have been applied." 22 Am. Jur. 2d, Declaratory Judgments, Section 98, page 965. See also 23 A. L. R. 2d Anno., page 1243, particularly Section 12 at page 1260. By reason of R. C. P. 57, State Farm was authorized, in a declaratory judgment action, to ask for a declaration of its rights under the two insurance policies and also for judgment against American Casualty. In essence, therefore, the action was one for recovery of judgment under the omnibus

clause of the American Casualty policy. Bearing in mind that, under the omnibus clause, permission must have emanated from the "named insured," State Farm's burden in this case in the trial court was to prove a state of facts from which it might be properly determined judicially that, on the occasion in question, Jefferson was operating the automobile with the implied permission of R. E. Clark.

James Clark did not have a general or unrestricted permission or authority from his father to use or to operate the insured automobile. On the contrary, the evidence discloses that James' use of the automobile was by express permission, requested and renewed in each instance. While the father indicated in his testimony that the son might have the right to use the automobile if neither he nor his wife were present to give express permission, the evidence does not disclose that the son ever actually used the automobile in such circumstances. Subject to this uncertain right of the son to use the automobile without express permission when neither of his parents was present to give permission, the son's right to use the automobile was restricted to express permission, and even express permission was denied when somebody else had need for use of the automobile and furthermore express permission was sometimes denied to the son for disciplinary reasons. There is nothing in the record from which it can properly be concluded that express permission when given, from time to time, was without restriction in range or scope either as to time or place. This is not a case, therefore, in which it can be said with reason or justification that the son's right to use the automobile was so general and unrestricted in nature and degree as to carry with it an implied authority in him to entrust the use of the automobile to a third person.

This is not a case in which the authority of the son to use the automobile was silent in relation to his right to entrust its use to another. It is not a case, therefore, in which it can be contended with justification that an absence of an inhibition in this respect could furnish basis for an implication of a right in the son to entrust the use of the

automobile to another. On the contrary, the evidence discloses clearly and without contradiction that repeatedly the son had been told by his father not to permit any other person to use or to drive the automobile.

This is not a case in which, by a course of continued or repeated conduct or acts, the father, the named insured, knowingly had acquiesced in the acts of his son in permitting Paul Jefferson, Jr., or any other person to drive the automobile. On the contrary, it does not appear from the record that the son on any prior occasion had permitted Paul Jefferson, Jr. or any other person to drive the automobile, with or without the knowledge of his father. This is not a case, therefore, in which it can be contended with reason that permission of Paul Jefferson, Jr. to drive or to use the motor vehicle, on the occasion in question, can be implied from previous acquiescence of the father in a known practice of his son in giving permission to Paul Jefferson, Jr. or to any other person or persons to drive or to use the automobile.

James Clark, the son, was not in the automobile while it was being driven by Paul Jefferson, Jr. and at the time it and the Walker automobile were involved in an accident. No implication of authority in Jefferson to drive the automobile can arise, therefore, from the presence in the automobile of James Clark, the first permittee. This is not a case in which it can be said that the one who had express permission from the named insured was present in the automobile and therefore that he was "master of the ship," "director of the enterprise," or in any similar sense in control of the automobile while it was being driven by Jefferson and when it was involved in the accident.

We do not believe permission to use the automobile on the occasion in question may properly be implied from the mere fact that on one prior occasion Jefferson had been given permission by the named insured or his wife to drive the automobile from the Clark home to the Jefferson home and back to the Clark home. This in no way tends to show an authorization from the named insured to his son to

entrust the use or driving of the automobile to Jefferson. Perhaps it may be said with reason that the fact of the express permission given to Jefferson in this single instance tends to exclude any implication of permission from the named insured to Jefferson to use or drive the automobile on any other occasion.

It is contended in behalf of State Farm that implied permission of the named insured is established by the fact that, in going to purchase gasoline for use in the automobile, Jefferson was using the vehicle for the benefit of the first permittee, perhaps for the mutual benefit of all of the three young men; and that the use in that respect was within the range of the *purpose* of the express permission given by the named insured to his son. The language of the omnibus clause requires that the actual use of the vehicle be with the "permission" of the named insured. The omnibus clause is not predicated upon the nature of the use contemplated by the initial permission. In the *Adkins* case, the permission granted by Earl Adkins to James Adkins obviously contemplated a use of the vehicle not only in leaving the Adkins home but also a use in returning to that home. The second permittee in the *Adkins* case, in driving the automobile, was endeavoring to return James Adkins to his home when the accident occurred. It appears, therefore, that the Court in the *Adkins* case gave emphasis to the element of permission or absence of permission, rather than to the mere nature of the use being made of the automobile at the time of the accident. It is obvious that, in the *Adkins* case, the second permittee was using the automobile for the benefit of James Adkins, the first permittee, when using the automobile to transport James Adkins, in his intoxicated condition, to his home and to the place where the automobile was customarily kept; but notwithstanding this fact, the Court held that Coffman, the second permittee in the *Adkins* case, was not driving the automobile with the permission of the named insured at the time the accident occurred.

For reasons stated in this opinion, the Court holds that the record in this case is insufficient to support the trial

court's finding that Paul Jefferson, Jr., at the time of the occurrence of the accident in question, was driving the automobile with the implied permission of R. E. Clark, the named insured; and, therefore, the judgment of the Circuit Court of Kanawha County is reversed.

*Reversed.*