No. 30,898.

B. A. Elliott, *Appellee*, v. Bankers and Shippers Insurance Company of New York, *Appellant*.

(21 P. 2d 376.)

Opinion filed May 6, 1933.

*A. B. Keller, George R. Malcolm* and *C. A. Burnett,* all of Pittsburg, for the appellant.

*Charles S. Denison, Carrie Fayne Denison* and *A. H. Carl,* all of Pittsburg, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by B. A. Elliott against the Bankers and Shippers Insurance Company of New York, and J. H. Elliott, to recover upon a policy insuring an automobile against fire and theft. Some time after the insurance was taken the automobile was stolen at Pittsburg, by persons unknown, driven about four miles from that place over an embankment, and there almost totally destroyed by fire. The insurance company refused to pay plaintiff for the loss and damage he had sustained, and the present action was brought and judgment rendered in his favor for $561. The defendant insurance company appeals.

In his petition plaintiff alleged that on January 27, 1928, he purchased a Hudson automobile from the Hanson Motor Company for $1,500 on the deferred-payment plan, and a payment of $600 was made at the time of purchase, leaving the amount of $1,011.36 to be paid, and a note was given covering the balance of the purchase price, which also included an insurance premium of $111.36; that the seller, the Hanson Motor Company, at the time of sale, objected to taking the title note of plaintiff as a part of the purchase price on the ground that he was being threatened with litigation growing out of some building projects, but stated that if the plaintiff's brother, J. H. Elliott, would sign the note and security for the balance of the purchase price of the automobile and the insurance premium he would close the sale and deliver the automobile to plaintiff; that

it was arranged with J. H. Elliott, who did sign the note and security with the understanding that the insurance paid for by the note when issued to the National Bond and Investment Company, would not only secure that company and the Hanson Motor Company, but also the interest of the plaintiff, B. A. Elliott, and any interest the said defendant, J. H. Elliott, might have in said automobile; that the Hanson Motor Company then delivered the note and security to the National Bond and Investment Company, and through an insurance broker agency the defendant insurance company issued and delivered a policy of insurance insuring the automobile as against loss by fire and theft, but the policy issued by the defendant company insured the National Bond and Investment Company, the Hanson Motor Company, and J. H. Elliott, omitting the name and the interest of the purchasing plaintiff therefrom, and that he did not know that his name and interest were omitted until after the theft and destruction of the automobile by fire; that the Hanson Motor Company transferred the note and security to the National Bond and Investment Company without recourse, that company procured the insurance which was to be in force from the time of the sale of the automobile and that on the night of the 8th of January, 1929, the automobile was stolen from plaintiff by persons unknown, driven over a highway embankment about four miles from the city of Pittsburg, and there almost totally destroyed by fire. It is stated that an arrangement was made by which the National Bond and Investment Company should finance transactions of this kind and obtain insurance for the purpose of protecting it as well as the vendors and purchasers of automobiles according to their respective interests where loss or damage occurred by fire or theft. When the loss occurred notice was given by the plaintiff, and the defendant insurance company employed the Insurance Adjustment Company of Kansas City, Mo., to investigate and adjust the loss. The adjuster came to Pittsburg and called on the plaintiff, he having obtained possession and control of the damaged automobile. The adjuster brought with him copies of the sales agreement, coverage on the car and the correspondence with respect to it. He states that he then learned that the car was owned by plaintiff and not by his brother, J. H. Elliott. He called the plaintiff and together they inspected the condition of the car to determine how nearly it was destroyed, and then interviewed McGuire of the Hanson Motor

Company, as to the amount he would pay for the salvage, and Mc-Guire agreed that he would give $65 for it, and the adjuster, when asked by the plaintiff whether he wished to have a release from him of the car, said that he would come back later and attend to that.

The defendant denied that it had any contract with the plaintiff, that his name or interest was not mentioned in the policy, and also denied that it had any knowledge of the position of plaintiff as owner until after the loss occurred, and that the note furnished in the sale transaction was never signed by plaintiff, but only by his brother, J. H. Elliott, who was not the purchaser of the automobile. The defendant, however, admitted that after it was claimed that the automobile was destroyed by fire it paid the National Bond and Investment Company the sum of $379.26, the amount of the unpaid balance due on the note transferred to it, but it did not admit any liability under the policy to the plaintiff.

The reply of the plaintiff was a denial of the averments of the defendant and, also, that defendant is estopped to deny that the Hanson Motor Company was not its agent to collect insurance premiums because it had full knowledge of the facts with reference to plaintiff's interest by and through its adjuster, while adjusting the loss and arranging for the application of the salvage for the protection of the defendant, and also that it is estopped from denying insurance to plaintiff under the contract for the reason that after the loss it requested the plaintiff by mail and telegram to take possession of the automobile and care for the same until the arrival of the adjuster, in order that the automobile might be salvaged.

The defendant demurred to plaintiff's petition, which demurrer the court denied, and at the close of plaintiff's evidence it also entered a demurrer thereto, which was overruled.

Error was assigned on instructions numbered three and four given by the court, and also on the admission of evidence, and the overruling of the motion for a new trial.

There is little, if any, dispute as to who was purchaser and owner of the automobile; no dispute that the plaintiff, B. A. Elliott, purchased the automobile at the price named, nor of the payment of $600 as the initial payment by plaintiff out of his own funds at the time of purchase; no dispute that the seller did not want to take the title note of plaintiff, and expressed a willingness to take the note signed by the plaintiff's brother for the deferred payments,

which included the insurance on the car then taken out. This title note furnished by the plaintiff was accepted by the seller and there is no dispute that J. H. Elliott was not the purchaser of the car or had any ownership in it. Although he was named as defendant, he did not contest plaintiff's ownership or his right to the insurance. There is dispute in the evidence as to the action of the adjuster when he called on plaintiff, and as to what was said and done on the two visits he made in respect to the adjustment of the loss. It appears he went to Pittsburg at the request of the defendant to adjust the loss, that he called plaintiff, the owner of the car, by telephone to meet him at the garage of the Hanson Motor Company, the seller. It also appears without dispute that he had adjusted other losses for the defendant, and that he came there on a telegram from the defendant, which he exhibited to plaintiff as his authority. The damaged car had been brought by plaintiff from the place where it had been burned to that garage and together the plaintiff and adjuster made several trips to examine the condition of the car and the adjuster proposed that they interview a dealer named McGuire at the garage as to what salvage he would pay on the damaged car, and after some negotiations with the adjuster McGuire said he would give $65 for it. When the adjuster called on plaintiff he asked the latter if he had a Kansas automobile license and was told by plaintiff that he had, which he procured and presented to the adjuster, and after examination of the same he returned it to the plaintiff. The adjuster came back a second time and took from plaintiff a written statement or proof of loss and then left the car in his possession as the policy required, and in effect told plaintiff that he would desire the plaintiff to sign a release on the car later. The conflict in the evidence as to what transpired in the matter of the adjustment of the loss was settled by the jury and evidently they believed the testimony of the plaintiff.

The insurance was paid for by plaintiff when the sale was made to him, it being included in the note that was given, which he furnished, and that with the accompanying papers was transmitted by the seller to the investment company. When it took out insurance in what is called the master policy for the protection of all interested, including itself, as well as the vendor and purchaser, it necessarily learned that insurance had been taken out on the automobile, through the seller—something he was authorized to do. According to the scheme the first step in the plan of insurance was

taken by the Hanson Motor Company, and its authority to do so was recognized in the policy procured from the defendant by the investment company. The policy in effect provided that upon the execution of the note, the insurance applied and paid for became effective from that date, and that within thirty days thereafter the investment company should make out a certificate in quadruplicate and forward a copy of the same to the home office of the company, and if this was not done within the thirty days, that feature of the insurance would expire, and if the financing was not completed by the investment company the insurance would cease.

It was the intention of all the parties concerned to insure the purchaser of the car. By a mistake the brother of plaintiff was named as purchaser, but the seller, who solicited and took the insurance which was in force from the date of sale, knew that plaintiff was the purchaser, and not J. H. Elliott. The investment company, a Chicago concern, procured and had possession of the policy, and plaintiff did not see it or learn that he and his interest were not protected by the policy until after the loss. It would have been an appropriate remedy for plaintiff to have asked for a reformation of the instrument, but that is not always necessary. If the provisions of the policy interpreted in view of the extrinsic facts show the real intent of the parties, reformation is not essential. (*Am. Cent. Ins. Co. v. McLanathan*, 11 Kan. 533.) In 26 C. J. 107 it is said:

"From the various cases involving the question of necessity for reformation it is possible to deduce the general rule that, if the policy when properly construed in the light of extrinsic facts has the same meaning it would have if reformed, and sufficiently shows the real agreement of the parties, no reformation is necessary. . . . Reformation is not necessary where the insurer has waived or is estopped to rely upon a breach of a condition in the policy."

See, also, *Insurance Co. v. Saindon*, 52 Kan. 486, 35 Pac. 15; *Mercantile Co. v. Insurance Co.*, 101 Kan. 522, 168 Pac. 323. Under these authorities and the evidence the contract of insurance may be treated as reformed and the plaintiff may be regarded as the purchaser and entitled to the insurance he had paid for to a party authorized to receive it. It appears that the premium is still retained.

If there was anything lacking in the support of this view it would be cured by the act of the adjuster, the representative of the defendant, who had been sent there to adjust the loss. The various steps which he took towards adjustment after learning of the omis-

sion of the plaintiff's name in the contract, and the dealing with the plaintiff as the purchaser, would of itself bind the defendant. He called the plaintiff and together they made repeated inspections of the car to determine the extent of the damage and discussed with him the credit the defendant would be entitled to obtain from the salvage; then he negotiated with the garage man as to the amount he would pay for the damaged car. When he returned some weeks later he still recognized the plaintiff as a purchaser and owner of the automobile, and took from him another statement or claim of loss. While the adjuster denied his authority to settle the loss, that was his business, and he also admitted that he had adjusted and settled losses for the defendant prior to that time. Knowing of the omission in the insurance contract, he carried on negotiations with plaintiff as a purchaser, and the defendant in effect thereby recognized the claim of plaintiff that he was the purchaser and therefore entitled to the insurance which belonged to a purchaser in the scheme of insurance.

There is complaint of instructions of the court touching this and related subjects. Instructions numbers three and four follow:

"3. It is to determine these differences and disputes between the plaintiff and defendant that you have been called into the jury box. If you should believe, from a preponderance of the evidence, in this cause, that the plaintiff was in fact the actual purchaser of the automobile in question from the Hanson Motor Sales Company; that he personally made the initial payment on the automobile; that his brother, J. H. Elliott, for plaintiff's benefit, executed the note and chattel mortgage in question to the Hanson Motor Sales Company, representing the balance of the purchase price of said automobile, and that said note and mortgage represented and contained a finance charge for the premium on the insurance contract in question; that the plaintiff personally applied to the Hanson Motor Sales Company for the insurance in question; that it was agreed that the insurance contract was to cover plaintiff's interest in the automobile in question, as regards loss or damage by fire and theft; that plaintiff personally paid the insurance charges embraced by said note to the Hanson Motor Sales Company, who in turn remitted the same to the National Bond and Investment Company; that the automobile was, at the time claimed by plaintiff, damaged from fire and theft; that plaintiff reported said loss or damage to the National Bond and Investment Company, who in turn notified the defendant, and that the defendant thereupon sent its adjuster to Pittsburg, Kan., to investigate said loss or damage, and to confer with plaintiff with relation thereto, and that said agent conferred with plaintiff in regard to said loss or damage, and that pursuant to said conference, said agent entered into negotiations with plaintiff, with regard to the disposition of the salvage of said automobile; that it was agreed between plaintiff and said adjuster, and said adjuster, pursuant to said negotiations,

entered into the control of said salvage and solicited an offer for said salvage, and that the salvage to said automobile was to or could be sold or disposed of for the benefit of the defendant. That then and under such circumstances, if found by you to exist, the defendant would be liable to plaintiff in this action for any loss or damage suffered in consequence of any theft of, or fire to his automobile, provided you should also believe from the evidence and circumstances in this case, that the adjuster of the defendant had either express or apparent or ostensible authority to have entered into negotiations with plaintiff, whereby it was agreed, if at all, that the defendant was to enter into the control of the salvage of said automobile, with power to dispose of the same, and provided still further, that either the defendant or its adjuster had full knowledge of the facts, that the agreement, if any, had been entered into between plaintiff and the seller of the automobile at the time of the sale thereof, whereby for the insurance charge, if any, collected, that the plaintiff's interest in the automobile was to be insured against fire and theft, and provided you should also believe from the evidence, that said adjuster knew, at the time of negotiating, if at all, with plaintiff for permission to sell the salvage of said automobile, in the interest of the defendant, that the plaintiff was claiming that his interest in said automobile had been insured in the defendant, on account of said negotiations, if any, which were had with the seller and said insurance charge, if any, made by said seller. Of course, if you should believe from the evidence, that each and all of the foregoing facts exist, then the defendant would be deemed to have waived any lack of authority on the part of the seller to have made the insurance contract, if any, with the plaintiff in the first instance, and by having, if at all, entered into the control of said automobile, with the right to dispose of the salvage, the defendant would be deemed to be estopped from claiming that the seller had no authority to have made, if at all, an insurance contract covering defendant's interest in said automobile. But, if you do not so find, your verdict should be for the defendant.

"4. You are instructed that generally an insurance adjuster is a representative of the company authorized to do any and every act necessary to bring about an adjustment of a loss. As to whether or not the insurance adjuster of the defendant, in this cause, had general or only limited authority as to the claim in controversy is for you to determine under all the facts, evidence and circumstances, in this cause. If his authority was general, then he had authority to deal with the plaintiff with regard to the adjustment of plaintiff's claim. On the other hand, if the authority of such adjuster was limited to investigating the facts incident to the loss and claim, then he would not have had general authority. You are instructed, however, that if the adjuster of the defendant negotiated, if at all, with the plaintiff, with reference to taking control of and salvaging the automobile to the defendant's benefit, and that said adjuster had apparent or ostensible authority to have acted in the premises, and that said adjuster failed, if at all, to have made known to plaintiff that his authority was limited, that then and under such circumstances, if found by you to exist, the defendant would be estopped from claiming that its adjuster was not an ordinary or general adjuster."

The objections to the instructions are general in character mainly as being unwarranted by the evidence. Our reading of the instructions leads us to the conclusion that they are in conformity with the evidence and correctly presented the issues that were involved. The principal issue was whether when the insurance was applied for and the premium paid by plaintiff it was the intention and agreement of the parties that it should cover and protect the interest of the plaintiff. That he was the purchaser is not open to question. He paid the premium for the insurance out of his own funds, and the policy, when taken out subsequently by the investment company, was intended to cover not only its interest but also that of the purchaser and seller as well. We think the case was presented to the jury upon the correct theory that the evidence warranted the instructions and that the verdict is sufficiently supported by the evidence.

Objections to some rulings on the omission of testimony have been examined and found to be without merit.

Finding no error in the record, the judgment is affirmed.