294 So.2d 736

**DIXIE AUTO INSURANCE COMPANY, a corporation**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, a corporation.**

**SC 466.**

Supreme Court of Alabama.

April 4, 1974.

Rehearing Denied June 6, 1974.

Robert E. Parsons, Birmingham, for appellant.

Thomas B. Huie, Birmingham, for appellee Safeco Ins. Co. of America, a Corp.

David E. Hicks, Birmingham, for appellees Gladys Brittain, Barry Wayne Brittain and James L. Brittain.

MADDOX, Justice.

Safeco Insurance Company of America brought a bill for declaratory relief against Dixie Auto Insurance Company, Gladys Brittain, Barry Wayne Brittain, James L. Brittain, Thelma C. Monroe and Newman F. Monroe in the Circuit Court, Tenth Judicial Circuit of Alabama, Equity Division, praying for a determination of the rights of the parties under policies of automobile liability insurance issued by Safeco and Dixie, respectively.

Barry Wayne Brittain was operating a 1969 Plymouth GTX automobile in the City of Birmingham on September 11, 1970, when it collided with an automobile occupied by Thelma C. Monroe and Newman F. Monroe. The Monroes subsequently brought suit against Barry Wayne Brittain and his brother, James L. Brittain claiming damages for injuries suffered in the accident.

It is undisputed that there was no policy of automobile liability insurance specifically covering or describing the 1969 Plymouth GTX. Safeco, however, had issued a liability policy to Gladys Brittain insuring and describing a 1968 Chevrolet Malibu and Dixie had issued its liability policy to Mrs. Brittain insuring and describing a 1964 Chevrolet. The 1969 Plymouth GTX and the 1968 Chevrolet Malibu were registered in Mrs. Brittain's

name and it appeared that the 1968 Malibu was principally operated by Mrs. Brittain, the 1969 Plymouth GTX principally operated by James Lynn. The evidence was to the effect that the 1964 Chevrolet was owned and operated by Barry.

The principal issue was to determine whether or not Safeco or Dixie under the circumstances afforded liability coverage on the 1969 Plymouth GTX under the "use of other automobiles" coverages of their respective policies.

Dixie appeals from a judgment which declared it liable to provide coverage under a "use of other automobiles" clause in its policy.

Barry Wayne Brittain was seventeen years old at the time his mother made application for the policy in question with Dixie Auto Insurance Company. Barry Wayne was the owner of the 1964 Chevrolet described in the policy. The bill of sale was made out to him. He paid for it, and the car was registered in his name. He purchased the tag for the car. The policy of insurance was in his mother's name because "it had to be," but Barry paid the premiums, shown on the application to have been $284. The application which his mother signed showed that "Barry Wayne Brittain" would be the one hundred percent user of the automobile.

Barry Wayne Brittain was operating his brother's car when he had an accident. Dixie denied liability coverage on the ground that Barry Wayne Brittain was not a "named insured" under the "use of other automobiles" clause. That clause provides:

"Use of Other Automobiles: If the named insured is an individual or husband and wife and if during the policy period such named insured, or the spouse of such individual if a resident of the same household, owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy under coverages A, B, and division 1 of coverage C with respect to said automobile applies with respect to any other automobile, subject to the following provisions:

(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured' includes (1) such named insured and spouse, and (2) any other person or organization legally responsible for the use by such named insured or spouse of an automoblie not owned or hired by such other person or organization. Insuring Agreement III does not apply to this insurance." The trial court said in its decree:

"It is the contention of the respondent, Dixie Auto Insurance Company, that the respondent, Barry Wayne Brittain, is not entitled to coverage under Dixie Auto Insurance Company's policy since Barry Wayne Brittain is not the named insured and consequently would be subject to the definition contained in the Dixie's policy —that only the named insured would have 'drive other car' privileges.

"The Court cannot agree with this conclusion. The evidence is very clear that an application for insurance was submitted to the Dixie Auto Insurance Company; that said application was in the name of Gladys Brittain, but the application, which is in evidence, clearly shows that Barry Wayne Brittain was to be the sole operator of the automobile insured. The Court finds, therefore, that the respondent, Barry Wayne Brittain, was in effect the named insured and would be entitled to the privilege of driving nonowned vehicles and would be protected under the policy of Dixie Auto Insurance Company."

Dixie rested its denial of coverage on the ground Barry Wayne was not a "named insured" and the "use of other automobiles" clause only applied to "named insured."

A vice president for Dixie testified that Mrs. Brittain was listed in the policy as the

"named insured" because the application asked that the policy of insurance be issued in her name as the named insured. We have examined the application which is in the record and find no explicit request was made regarding who should be listed as the "named insured." Admittedly, the application was made by Mrs. Brittain and she signed it. The 1964 Chevrolet was described. The application does not show ownership of the automobile. However, the application shows affirmatively that Barry Wayne Brittain, Mrs. Brittain's seventeen year old son, would be the one hundred percent user of the car.

The decision to list Mrs. Brittain as the only "named insured" probably was a decision made by Dixie. In other words, Dixie probably lists the "applicant" as the "named insured" in its policies regardless of whether the applicant actually is the "user" of the automobile. Dixie apparently considers that every applicant "requests" to be the only "named insured." At least that is the only way we can reconcile the statement by Dixie's vice president that Mrs. Brittain "requested" that she be "named insured." [1]

There is other evidence which would indicate that the trial judge was justified in finding Barry Wayne Brittain was a "named insured." The size of the premium ($284) reflects that a young driver would be using the automobile. From the testimony the court could infer that Dixie knew, even considering the application alone, that a mother was applying for a policy to cover a car which her son would be driving one hundred percent of the time.

Dixie's main argument is that the trial court made a new contract for it. Under the facts here, we cannot agree. Insurance contracts or policies may be reformed with respect to the "named insured" in order to make them conform to the real agreement of the parties. 44 C.J.S. Insurance § 279, p. 1117. The record demonstrates that Dixie knew at the time it issued the policy that Barry would use the 1964 Chevrolet "100%" of the time. Dixie would have listed Barry as a "named insured" had it been "requested" to do so. Consequently, under the facts of this case, we are unwilling to overturn the trial court's determination that Barry was a "named insured" and that Dixie was the primary insurer. It is a familiar principle that equity looks through form to substance. United States Finance Co. v. Jones, 288 Ala. 238, 259 So.2d 264 (1972). That equitable principle, under the facts of this case, seems uniquely applicable.

Affirmed.

MERRILL, McCALL, FAULKNER and JONES, JJ., concur.

COLEMAN and BLOODWORTH, JJ., and LAWSON, Special Justice, dissent.

HEFLIN, C. J., not sitting.

---

1. The company vice president testified on Dixie's custom as follows:

"Q (By Mr. Huie) Mr. Warren, . . . when you looked at this application, when it shows the same name, last name, and of course the company knows that this is the mother and this is the son, what is the reason for issuing the policy in the name of the mother and showing the son as 100% user of it?

"A Generally speaking, we issue the policy as requested. Generally, there are underlying reasons why there is a request that the policy be issued that way, and so if an application comes in in the name of the parent, which I would say the majority of the policies involving young sons are done that way for the protection of the parents. Then, they are usually issued in that manner.

"Q Are you saying then because of Barry Wayne being a minor—

"A Well, there are—I'm speaking of people, other people's reasons. There is no legal reason to my knowledge, or no compelling reason that our company has that the policy be issued in any particular name.

"Q In other words, what you're saying is that as far as Dixie is concerned, you would have issued this policy in the name of Barry Wayne Brittain as the name insured, other than the way it was written?

"A Had the name insured been requested that way. We issued the policy as we were requested to issue the policy."