564 A.2d 194

John M. STUMP, Administrator of the Estate of Gary L. Stump, Deceased

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

Appeal of PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY.

John M. STUMP, Admr. of the Estate of Gary L. Stump, Deceased

v.

The PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued May 17, 1989.

Filed Aug. 24, 1989.

Barbara B. Carl, Pittsburgh, for Prudential, appellant.

Douglas R. Nolin, Washington, for State Farm, appellee.

Before BROSKY, POPOVICH and MONTGOMERY, JJ.

POPOVICH, Judge:

This case involves an appeal from the October 3, 1988, order of the Court of Common Pleas of Washington County denying the motion for post-trial relief of the appellant/The Prudential Property & Casualty Insurance Company (here-

inafter Prudential).[1]  We reverse in a case of first impression.

The facts of record indicate that, on May 29, 1982, Gary L. Stump was killed while a passenger in a vehicle involved in an accident on U.S. Route 40, east of Uniontown, Pennsylvania.

At the time of the accident, Gary was a resident in the household of his father, John M. Stump.  The Stump family had three (3) vehicles, none of which was involved in the accident but all were titled in the name of John M. Stump.  Two of the vehicles were insured with State Farm Mutual Automobile Insurance Company (hereinafter State Farm), i.e., a 1973 Chevrolet half-ton pickup truck and a 1976 Pontiac Grand Prix.  The third vehicle, a 1977 Ford F–100 pickup truck, was covered by Prudential.

John M. Stump, as the administrator for the estate of Gary L. Stump, presented a claim for post-mortem benefits to Prudential and State Farm under the now repealed Pennsylvania No–Fault Motor Vehicle Insurance Act (hereinafter Act).[2]  Prudential paid the total post-mortem no-fault benefits to Gary's estate: $10,000 work loss, $5,000 survivor's losses, and $1,500 funeral expenses.  State Farm refused to contribute toward the payment of these benefits.

As a result, Prudential, as an original defendant in a lawsuit instituted by the Estate of Gary L. Stump,[3] was able to join State Farm as an additional defendant.  It was Prudential's contention that its payment of all of the no-fault benefits, given decedent's status as an "insured"

1.  The October 3, 1988, order also "confirmed" the trial court's March 21, 1988, ruling in favor of State Farm Mutual Automobile Insurance Company.  Further, upon praecipe by State Farm filed October 12, 1988, the prothonotary entered judgment in its favor and against The Prudential Property & Casualty Insurance Company in accordance with the trial court's October 3rd order.  The present appeal was filed timely from the October 3rd order, after it had been reduced to judgment.

2.  Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 101, repealed by Act of February 12, 1984, P.L. 26, § 8(a), No. 11, effective October 1, 1984.

3.  Stump's complaint sought, inter alia, a lump sum payment of the $15,000 wage loss benefits instead of the monthly distribution being utilized by Prudential.

under multiple policies, entitled it to receive reimbursement or indemnification for two-thirds (⅔) of the payments made in accordance with Section 204 of the Act. After the dispute went to trial, Prudential's request for reimbursement was denied. Post-trial motions were filed, argued and denied. Thereafter, upon praecipe of State Farm, the order denying post-trial motions was reduced to judgment and this appeal ensued.

The single issue raised for our consideration is one of whether, under the applicable provisions of the Act and the facts at bar, the decedent's post-mortem benefits are recoverable from the appellant only.

In resolving the question posed, we begin by examining the pertinent provisions of the Act under Section 204, which provide in part:

§ 204.   Source of basic restoration benefits.

(a) Applicable security—The security for the payment of basic loss benefits applicable to an injury to:

(1) ...

(2) an insured is the security under which the victim or deceased victim is insured....

(b) Multiple sources of equal property.   If two or more obligations to pay basic loss benefits apply equally to an injury under the priorities set forth in subsection (a) of this section, the obligor against whom a claim is asserted shall first process and pay the claim as if wholly responsible. Such obligor is thereafter entitled to recover contribution prorata from any other such obligor for the basic loss benefits paid and for the costs of processing the claim.

40 P.S. § 1009.204(a)(2), (b) (Repealed).

The term "insured" is defined by the Act at Section 103: "Insured" means:

(A) an individual indemnified by name as an insured in a contract of basic loss insurance complying with this act; and

(B) a spouse or other relative of a named insured, ...—

(i) not identified by name as an insured in any other contract of basic restoration insurance complying with this act; and

(ii) in residence in the same household with the named insured.

40 P.S. § 1009.103 (Repealed).

■ The next step in our analysis is an examination of the insurance policies in effect at the time of Gary's death, the interpretation of which is a question of law for the Court, and, where the language of a contract of insurance is clear and unambiguous, a court is required to give effect to that language. *Duffy v. Nationwide Insurance Co.,* 374 Pa.Super. 55, 57, 542 A.2d 144, 145 (1988).

■ Instantly, Prudential's declaration sheet on the 1977 Ford F–100 pickup truck listed the "names insured" as "John M. Stump". The vehicle operators were identified as "John M. Stump", No. 1 and "Gary Lee Stump", No. 2. The policy that accompanied the insurance issued by Prudential provided at page 6 of the "introduction" that:

This policy is a contract between you and us. Throughout this policy, *when we refer to "you," we mean you, the person shown as the named insured on the Declarations Page of this policy, and your spouse, if he or she lives in your household.* When we refer to "we" or "us," we mean Prudential Property and Casualty Insurance Company.... (Emphasis added)

Under the same heading, "introduction", reference was made to "endorsements" appearing on the Declaration Page being considered as part of one's policy.

The "named insured" under Prudential's policy had elected additional coverage, evidence of which appears on the declaration sheet. The substance of the added coverage elected by the insured is not herein germane, but it requires mentioning that the insurer had "exclusions" for which coverage did not apply; *e.g.,*

Relatives Who Have Their Own Auto Insurance

(c) any relative entitled to Pennsylvania personal injury protection coverage as a self-insurer or as a named insured in another insurance policy;

Where an "eligible person" sustained bodily injury due to an accident involving a motor vehicle, Prudential obligated itself to pay all personal injury protection benefits. "Eligible person" was defined on page 10 of the "endorsement" booklet as:

(a) the named insured or any relative who sustains injury while occupying ... any motor vehicle.

Further, at page 11 of the same document, "named insured" was stated to mean "the person ... named in the declarations[.]" Lastly, on the final page, it was written that the "endorsement(s)" in the booklet formed a part of the insured's policy.

Under "part 2" of the "policy" pamphlet, captioned "who is insured (part 2)", Prudential wrote that coverage would be provided in the following instance:

—*in someone else's car*

You and [any] relative [who was living in your household at the time the accident occurred] are also insured while occupying a car which is owned by someone else.... This non-owned car has the same coverages as any one of your cars.

The only limitation Prudential placed on its liability was recited at page 13 of the "endorsement" booklet under the heading "Non-Duplication of Benefits; Other Insurance"; namely:

In no case shall the Company be liable for a greater proportion of any loss than this policy's limitation of liability bears to the sum of all limits of liability of all applicable insurance and self-insurance.

To the same effect see page 14 of Prudential's "policy" handbook.

In light of the aforementioned, there is no disputing that Gary L. Stump was an "insured" as that term is defined under the Act (as a "relative of a named insured") and

under Prudential's policy of insurance (as "any relative who was living in [the named insured's] household ... while occupying a car which is owned by someone else") at the time the accident occurred. Coverage, on such occasions, would not and was not denied by Prudential. It is merely Prudential's contention that Gary was not a "named insured" so as to preclude it from securing from State Farm its proportionate share of the liability coverage as allowed for under the Act. Our resolution of this matter is discussed infra.

For now, we need to examine State Farm's "Car Policy" issued in this case before a proper ruling on the matter in dispute can be made. To-wit, the definition section contained the following relevant terms:

*Insured*—means the person, persons or organization defined as insureds in the specific coverage.

\* \* \* \* \* \*

*You* and *Your*—means the named insured or named insureds shown on the declarations page.

The "Declarations Page" listed "John M. Stump" as the "named insured" of the 1976 Pontiac Grand Prix, and that he had various coverages, one of which was "no-fault". In particular, under "Section II—No–Fault—Coverage P", State Farm conditioned payment in accordance with the Act for "bodily injury" to an "insured", caused by an accident resulting from the maintenance or use of a motor vehicle. As is herein relevant, "insured" and "relative" were defined therein as:

*Insured*—means:
  1. you or any relative;
    a. while occupying a motor vehicle;

\* \* \* \* \* \*

*Relative*—means:
  1. ...
  2. anyone related to you by blood, marriage or adoption;

318

As was the case with Prudential, State Farm put limitations on its exposure to liability in Section II, under "Other Insurance". It provided:

> If an insured has similar vehicle insurance or self insurance the total amount due shall not exceed the limit of the source with the highest limit. We will pay our share. Our share is the percent the limit of this policy bears to the total amount of all such insurance available.

State Farm limited further its accountability to a claimant by other language appearing in the same section of its "Car Policy"; *i.e.,*

> THERE IS NO COVERAGE FOR BODILY INJURY TO:
> 1. ...
> 2. A RELATIVE:
>     a. ...
>     b. WHO HAS NO–FAULT COVERAGE AS A SELF–INSURED OR AS A NAMED INSURED IN ANOTHER POLICY.

With regard to the insurance on the 1973 Chevrolet pickup by State Farm, no one contends that the same policy requirements did not exist under that separate policy of insurance.

Further, as part of the State Farm's case at trial, it produced the two applications for insurance completed by John M. Stump for his 1973 Chevrolet pickup and 1976 Pontiac Grand Prix. At the bottom of the form for the 1973 Chevrolet, it was written that the son, albeit listed as a 0% driver of the vehicle with the father as the 100% user, "will get other car when it comes. Gary, son, has ins. with Prudential # 282A317221 liability 12/50/25."

An agent for State Farm testified that the double asterisk after Gary's name was to indicate that he drove the 1973 Chevrolet 0% of the time and that he had his own insurance with Prudential.

The insurance application for the 1976 Pontiac Grand Prix again had "John L. Stump" as the 100% driver; Gary was noted to drive the vehicle 0%. The same agent that ex-

plained the insurance form for the 1973 Chevrolet also testified in regard to language appearing at the bottom of the application for the 1976 Pontiac Grand Prix; *i.e.*,

son's truck insured under Prudential *he is rated as principal operator on that vehicle. He will come to State Farm when his come due. * 382_____.

The preceding, the agent remarked, would indicate that there were two vehicles being insured by State Farm, with a third insured with another insurer (Prudential). And, with Gary's policy expiring with Prudential, opined the witness, the verbiage: "He will come to State Farm when his come due" was industry jargon for Gary making the transition to State Farm upon the expiration of his insurance with Prudential.

When John M. Stump took the stand, he admitted that he had title to three (3) vehicles, one of which was the 1977 Ford F–100 pickup truck. He arranged to secure a bank loan to finance its purchase. However, it was owned by his son; the insurance, maintenance and use of the 1977 Ford F–100 was left exclusively to Gary. As for the title to the truck, the father testified to the reasons for his retention of the same:

Well, he [Gary] wasn't—he was working in a junkyard and he didn't have enough of income in. That is what they said. I had more income coming in, so that is why I got it [—the title—] in my name.

In the father's mind, there was no doubt as to whom the 1977 Ford F–100 truck belonged. It was Gary's. This is why, stated the father, his son made the insurance payments on the vehicle to Prudential.

It was State Farm's position that Section 204(a)(2), as applied to the facts of the case, warranted the finding by the trial court that Prudential alone would bear the cost for Gary L. Stump's death. The trial court agreed. However, the basis for so holding was the Gary's "ownership" of the 1977 Ford F–100 pickup truck, and *his* payment of the premiums to Prudential, was consistent with limiting the liability for payment of the post-mortem benefits to Prudential. Its rationale for doing so was as follows:

There is no doubt that Gary was not listed on the two State Farm policies as a named insured, and he was not listed on the Prudential policy as a named insured. Yet we find it is beyond cavil that the ... Prudential policy was the insurance policy of Gary L. Stump. The pick-up truck was his; he bought it and was paying for it. He procured the automobile insurance for it through Prudential. Gary did not rely on the policies of his father.

Under § 204 the purpose of the section is to provide a source of funds to all accident victims entitled to benefits. *Wallman v. Nationwide Mutual Insurance Company,* 98 Dauph 166 (1976). Gary was doing what the law required him to do: securing and paying for his own insurance on his own vehicle. *Id.*

Gary paid premiums for motor vehicle insurance on his own truck, he was contributing to a separate policy of insurance, a policy which did not insure his father's vehicles. It seems to the Court that the purposes of the No–Fault Act are fostered by having Gary or his estate look to his own insurance policy for benefits. Under the circumstances it is not material that Gary was not listed as a named insured on the policies. Although our research and the research of the attorneys' have revealed no case on point, we hold that under § 204(a)(2), the basic restoration benefits must be provided by the Prudential policy only, and Prudential may not look to State Farm for contribution.

Trial Court Opinion at 7.

We view the position of State Farm to be one of attempting to secure "named insured" status for the decedent/Gary L. Stump under the policy of insurance issued by Prudential to John L. Stump on the 1977 Ford F–100 pickup truck. This is not uncommon:

Named insured status is frequently sought by or on behalf of one not named as such in the automobile insurance policy on the basis that he is the owner of or the person actually responsible for the automobile described in the policy.

See Anno.: Who Is "Named Insured" Within Meaning Of Automobile Insurance Coverage, 91 A.L.R.3d 1280, § 2[a] at 1286 (1979).

The Act under consideration here is quite explicit in providing that where multiple obligors exist, as a source of basic restoration benefits, the payor is "entitled to recover contribution prorata from any other such obligor for the basic loss benefits paid and for the cost of processing the claim." 40 P.S. § 1009.204(b) (Repealed). The exceptions are that the claimant is neither *identified by name* in a contract of insurance nor is the claimant, in attempting to secure basic restoration benefits vis-a-vis a *relative of a named insured, identified by name* as an insured in any other contract of basic restoration insurance. Where this is the case, a claimant will not be labelled an "insured", as that term is defined under the Act, so as to trigger the multiple obligor/contribution prorata provision.

We find the present scenario to be just such a situation, and dismiss, as unfounded in the law, the trial court's determination that "ownership" of the 1977 Ford F–100 pickup restricted the sources to which one could look to recoup payment of basic restoration benefits, and, as a result, denying the effectuation of the multiple obligor/contribution prorata provision of the Act. Nowhere does the Act refer to "ownership" of a vehicle as the conduit through which payment of basic restoration benefits is to be measured.

It has been oft-stated that where the language of a statute is clear and unambiguous, it is to be enforced and not convoluted under the guise of pursuing the "spirit of the law". See Statutory Construction Act, 1 Pa.C.S. § 1921 (Supp.1988–89).

Instantly, we had a contract of insurance issued by Prudential listing "John M. Stump" as the "named insured" of a 1977 Ford F–100 pickup truck. Moreover, a Prudential agent testified that the premium payment, which was "based on a monthly income of less than $500", was calcu-

lated in accordance with *John M. Stump's* status as the "named insured". The reservation of the "named insured" solely to the appellation appearing on the face of the declaration page was stated clearly to be so in the "policy" and "endorsement" booklets provided to John M. Stump. This is consistent with established law; to-wit:

> Whenever the term "named insured" is employed, it refers only to the person specifically designated upon the face of the contract; but whenever the unqualified term "insured" is used, it includes not only the named insured but such other persons as are protected by the omnibus clause. The owner of an automobile is not the named insured where another is so designated by the policy.

7 Appleman, Insurance Law and Practice, § 4354. Accord 1 Long, Law of Liability Insurance 3–3, § 301. This is consistent with the decisions of those jurisdictions which have had occasion to address the scope and meaning of the term "named insured". For example, in *Griffin v. State Farm Automobile Insurance Co.*, 129 Ga.App. 179, 199 S.E.2d 101 (1973), Harland Griffin bought a vehicle for his daughter, Mary Elizabeth Griffin. He had the vehicle insured under a family insurance policy which had been issued in the name of his wife, Nellie Ruth Griffin. The issue was whether Mary Elizabeth Griffin was an uninsured motorist. State Farm had the uninsured motorist coverage on the injured party and was contending that Mary Elizabeth Griffin was insured:

> State Farm contends that the amendment to the Travelers' policy which added Mary Elizabeth Griffin as a driver of the vehicle made her a named insured. The policy defines a named insured as "any individual named in Item 1 of the declarations and also includes his spouse, if a resident of the household." The only person named in the amendment to the policy under Item 1 is Nellie Ruth Griffin the spouse of Harland Griffin. Thus, there is no merit to the contention.

129 Ga.App. at 182, 199 S.E.2d at 104.

In *Adkins v. Inland Mut. Ins. Co.*, 124 W.Va. 388, 20 S.E.2d 471 (1942), the plaintiff/Adkins filed suit against

Inland Mutual Insurance for injuries sustained when she was struck by an automobile driven by a Thomas Coffman.

The automobile was registered in the name of Earl Canterbury and was covered by the policy issued by Inland Mutual Insurance in compliance with the Financial Responsibility Act of West Virginia. It was shown that James Canterbury paid the deferred purchase installments on the vehicle as well as the insurance premiums.

On the date of the accident, Coffman told James he would drive because of James' intoxicated condition. James gave an unintelligible answer.

The insurance company asserted on appeal that Earl Canterbury alone was the "named insured", and having not received permission from Earl to drive the automobile, there was no liability to Coffman from the insurer. Adkins contended that the evidence showed that James was, in fact, the owner of the automobile, and that by the provisions of the State's insurance law, he was, in fact, the named insured, and the circumstances under which Coffman drove the vehicle amounted to permission being given by James, and, therefore, the insurer was liable. In reversing a judgment in favor of the plaintiff, the West Virginia Supreme Court wrote:

> The liability of [the insurer] must be measured by its policy, unless the scope thereof is broadened by the statute, the expressed intent of the policy being to comply with its provisions.
>
> \* \* \* \* \* \*
>
> In the policy itself, the name of James Canterbury appears only in an indorsement attached thereto....
>
> \* \* \* \* \* \*
>
> From the foregoing it appears that the policy covered any operation of the vehicle herein involved, by James Canterbury....
>
> \* \* \* \* \* \*
>
> Although the word "insured" without further qualification should apply to any person entitled to protection

under the policy, including a "named insured", the latter term can apply only to the person named as the insured. *Madison v. Steller*, 226 Wis. 86, 275 N.W. 703. As hereinbefore pointed out, Earl Canterbury was the named insured and James' name does not appear in the policy, except in the indorsement deleting paragraph VII as to him.

\* \* \* \* \* \*

"Named Insured", as used in this policy, can refer to but one person, Earl Canterbury

\* \* \* \* \* \*

We find nothing in the act which would warrant extension of the policy terms.... On the question of ownership, it may be true that James made payment for the car in question, but this fact can not operate to make James the "named insured."

20 S.E.2d at 472–73. Next, in *Old Reliable Insurance Co. v. Brown*, 558 S.W.2d 190 (Ct.App.Ky.1977), the Court of Appeals of Kentucky reversed a circuit court proceeding allowing the estate of a decedent to recover from the insurer under an auto insurance policy held by the decedent's daughter. In doing so, the Court of Appeals wrote:

The trial court further based its conclusion of coverage on the fact that [the decedent's daughter's] brother John, who still resided with his parents, was listed on [decedent's daughter's] application for insurance as using the insured vehicle 50% of the time. By virtue of this and because John became the family's principal driver upon [decedent's daughter's] departure, the trial court concluded that John occupied the status of an additional insured under the policy.

The trial court erred in reaching this conclusion because the court may not read into a policy of insurance conditions and terms which are not incorporated therein. [The decedent's daughter] was the sole named insured on the face of the policy. The policy further defined "insured" as: "(1) The named insured as stated in the policy ... and any other person designated as the named in-

sured in the schedule." John Brown's name does not appear on any portion of the policy. Therefore, John was not a principal insured under this contract, and coverage for his mother could not attach through him.

558 S.W.2d at 191 (Citation omitted). See also *Waller v. Rocky Mountain Fire and Casualty Co.*, 272 Or. 69, 535 P.2d 530 (1975); *Holthe v. Iskowitz*, 31 Wash.2d 533, 197 P.2d 999 (1948) and compare with *Kent v. Dairyland Mut. Ins. Co.*, 177 Neb. 709, 131 N.W.2d 146, 149 (1964) (Father and son were named insured on the policy so that son could not cancel insurance without approval of father prior to accident); *Ohio Casualty Ins. Co. v. Goodman*, 163 Okl. 243, 22 P.2d 997 (1932).

We find that the trial court's reliance on the fact that the decedent was the "owner" of the vehicle insured by Prudential, although titled in the father's name, is misplaced since it works an injustice upon Prudential who set the premiums to be paid in the belief that the "owner" of the vehicle was John M. Stump. Compare these facts with those in *Dixie Auto Ins. Co. v. Safeco Ins. Co. of America*, 292 Ala. 358, 294 So.2d 736 (1974), wherein a bill for declaratory relief was filed to determine which of two insurance companies (Safeco and Dixie) was to afford liability coverage on a 1969 Plymouth GTX. It appears that one Barry Wayne Brittain was operating the vehicle in question when he collided with another vehicle occupied by the Monroes.

The facts indicated that there was no insurance on the 1969 Plymouth. However, Safeco had issued a policy of insurance on a 1968 Chevrolet Malibu and Dixie issued its liability insurance policy to Mrs. Brittain insuring and describing a 1964 Chevrolet. The Court went on to recount additional facts and state its rationale for finding that Dixie was to be held accountable to satisfy the claim against Barry. It stated the matter thusly:

Barry Wayne Brittain was seventeen years old at the time his mother made application for the policy in question with Dixie Auto Insurance Company. Barry Wayne was the owner of the 1964 Chevrolet described in the

policy. The bill of sale was made out to him. He paid for it, and the car was registered in his name. He purchased the tag for the car. The policy of insurance was in his mother's name because "it had to be," but Barry paid the premiums, shown on the application to have been $284. The application which his mother signed showed that "Barry Wayne Brittain" would be the one hundred percent user of the automobile.

*   *   *   *   *   *

Admittedly, the application was made by Mrs. Brittain and she signed it. The 1964 Chevrolet was described. The application does not show ownership of the automobile. *However, the application shows affirmatively that Barry Wayne Brittain, Mrs. Brittain's seventeen year old son, would be the one hundred percent user of the car.*

The decision to list Mrs. Brittain as the only "named insured" probably was a decision made by Dixie. In other words, Dixie probably lists the "applicant" as the "named insured" in its policies regardless of whether the applicant actually is the "user" of the automobile. Dixie apparently considers that every applicant "requests" to be the only "named insured." At least that is the only way we can reconcile the statement by Dixie's vice president that Mrs. Brittain "requested" that she be "named insured."

There is other evidence which would indicate that the trial judge was justified in finding Barry Wayne Brittain was a "named insured." *The size of the premium ($284) reflects that a young driver would be using the automobile.* From the testimony the court could infer that Dixie knew, even considering the application alone, that a mother was applying for a policy to cover a car which her son would be driving one hundred percent of the time.

Dixie's main argument is that the trial court made a new contract for it. Under the facts here, we cannot agree. Insurance contracts or policies may be reformed with respect to the "named insured" in order to make

them conform to the real agreement of the parties. 44 C.J.S. Insurance § 279, p. 1117. *The record demonstrates that Dixie knew at the time it issued the policy that Barry would use the 1964 Chevrolet 100% of the time. Dixie would have listed Barry as a "named insured" had it been "requested" to do so.* Consequently, under the facts of this case, we are unwilling to overturn the trial court's determination that Barry was a "named insured" and that Dixie was the primary insurer. It is a familiar principle that equity looks through form to substance. *United States Finance Co. v. Jones,* 288 Ala. 238, 259 So.2d 264 (1972). That equitable principle, under the facts of this case, seems uniquely applicable.

294 So.2d at 737–38 (Footnote omitted; Emphasis added). Compare with *Billups v. Ala. Farm Bur. Mut. Ins. Co.,* 352 So.2d 1097 (Ala.1977).

In contrast to *Dixie,* supra, there is no evidence to show that Prudential was cognizant (either by direct or circumstantial proof) that John M. Stump was purchasing the insurance on the 1977 Ford F–100 pickup for his son. In fact, the premium was set to accommodate the father's income level rather than the son's, so stated Prudential's agent at the trial. As for the reliance by the trial court and State Farm upon the fact that Gary L. Stump paid the premiums on the Prudential policy, we would answer that, under the facts of this case,

... the source of the money with which the policy was furnished is not material. It does not control coverage. This question can be determined only by the provisions of the policy as of the time of the accident because of which a claim is made.

*Allstate Insurance Co. v. Wallace,* 435 S.W.2d 537, 539 (Tex.Ct.App.1968).

Consequently, because we find no ambiguity in the insurance contract issued by Prudential, nor do we detect that there was a mistake in the issuance of the policy to the father, see *Unigard Ins. Co. v. Studer,* 536 F.2d 1337, 1339 (10th Cir.1976); *Jarvis v. Aetna Cas. and Sur. Co.,* 633

P.2d 1359 (Alaska 1981); *United States Fidelity and Guaranty Co. v. Winkler,* 351 F.2d 685 (8th Cir.1965); *Elliott v. Bankers' & Shippers' Ins. Co.,* 137 Kan. 492, 21 P.2d 376, 378–79 (1933), we conclude that Gary was not a "named insured" under Prudential's policy of insurance. As such, Section 204(b) is activated to avail Prudential the opportunity to seek contribution from State Farm. See *Fireman's Fund Insurance Co. v. Nationwide Mutual Insurance Co.,* 317 Pa.Super. 497, 464 A.2d 431 (1983). Since the trial court's order is to the contrary, improperly relying upon "ownership" as the pivotal factor to buttress its decision (a point we hold is inconsistent with the provisions of the Act), it is reversed and the case is remanded for proceedings not inconsistent with the Opinion herein written.

Order reversed and case remanded. Jurisdiction is relinquished.

MONTGOMERY, J., concurs in the result.