VERCIE HALL ADKINS *v.* INLAND MUTUAL INSURANCE COMPANY

(No. 9279)

Submitted April 28, 1942. Decided May 26, 1942.

KENNA AND ROSE, JUDGES, dissenting.

*Sayre & Bowers,* for plaintiff in error.
*T. A. Myles* and *Love & Love,* for defendant in error.

LOVINS, JUDGE:

This action was instituted by Vercie Hall Adkins to recover from the Inland Mutual Insurance Company the amount of a judgment and costs theretofore rendered in her favor and against Thomas Coffman in the Circuit Court of Fayette County. There was a jury verdict in favor of the plaintiff and judgment rendered thereon for the sum of $5,000.00, to which judgment this writ of error is prosecuted.

In April, 1941, defendant in error obtained her judgment in the amount of $5,000.00 against Coffman in an action of trespass on the case for injuries sustained by her when she was struck by an automobile driven by Coffman, on November 28, 1940. The circumstances under which the accident occurred are not here involved, aside from those relating to the reason for Coffman's operation of the car. Execution on the judgment was returned unsatisfied and this action was brought against the Insurance Company, the declaration alleging that the company was liable for payment of the judgment under a public liability policy issued in compliance with the "Financial Responsibility Act," (Ch. 61, Acts 1935; 1937 Michie's Code, 17-20) to Earl Canterbury.

The automobile involved in the accident was registered in the name of Earl Canterbury and was specifically covered by the policy sued on. It was shown that James Canterbury paid the deferred purchase installments on the car as well as the insurance premiums, and that his

operator's license had been revoked because of a conviction of driving while intoxicated some time prior to the occurrences herein mentioned. Under the terms of the Financial Responsibility Act, and the issuance of the policy, James obtained from the State Road Commission an operator's license, restricted to the operation of the car covered by the policy. On the day of the accident, Coffman accompanied James in driving from Glen Jean to Minden, both in Fayette County. James stopped near a drug store and Coffman went into the store, remaining there five or ten minutes. When he returned to the car, finding James in an intoxicated condition and asleep or "passed out," Coffman told James he would drive the car home. Receiving an unintelligible reply, Coffman took the wheel and had driven about two hundred yards when the accident took place. It appears that the car was kept at the Canterbury home, where both James and Earl resided, and that Coffman made frequent trips therein with James, operating the same on several occasions.

The plaintiff in error asserts that Earl Canterbury alone is the "named insured", that Coffman had no permission from Earl, express or implied, to drive the automobile, and therefore that it is not liable for the judgment rendered against Coffman. This is in substance the basis of the assignments of error. The defendant in error asserts that the undisputed evidence shows that James Canterbury was, in fact, the owner of the automobile, and that by the provisions of Chapter 61, Acts 1935, he is, in fact, the named insured, and that the circumstances under which Coffman drove the automobile away from the drug store in the Town of Minden amounted in law to permission given by James Canterbury, and therefore the insurance company is liable.

The pivotal question is, does the policy by its terms or by implication cover the liability of Thomas Coffman under the circumstances hereinabove stated? Chapter 61, Acts 1935, is a species of uniform legislation which has been approved as a constitutional enactment by this

Court in the case of *Nulter* v. *Commissioner,* 119 W. Va. 312, 193 S. E. 549, 550, 194 S. E. 270. As stated by Judge Hatcher in the *Nulter* case, "The declared purpose of this statute is to protect the public on the highways against the operation of motor vehicles by 'reckless and irresponsible persons' and thus is referable to the police power of the State."

The liability of plaintiff in error must be measured by its policy, unless the scope thereof is broadened by the statute, the expressed intent of the policy being to comply with its provisions. Section 2 provides that a suspended license "shall remain so suspended * * * until he shall have given proof of his ability to respond in damages for any liability thereafter incurred, resulting from the ownership, maintenance, use or operation thereafter of a motor vehicle * * *". The same section further provides that if the commissioner finds that the guilty person, on the occasion of the offense was a member of the household of the owner of the vehicle, and that there was not, at the time of the offense, a motor vehicle registered in the name of the guilty person, such person shall be relieved of the necessity of giving proof in his own behalf so long as he is operating a vehicle for which the owner has given proof; by that section the commissioner shall designate the restrictions as to operation on the face of the operator's license issued to the guilty person.

On July 27, 1940, plaintiff in error filed with "The Safety Responsibility Department" of the State Road Commission an "Owner's Policy Certificate", certifying that it had issued "a Motor Vehicle Liability Policy, as defined in Chapter 61, Laws of 1935", to Earl Canterbury covering the Ford Tudor sedan herein involved. This certificate was indorsed as "intended to relieve a household member or an employee who is not a motor vehicle owner," James Canterbury being named in the indorsement. Accompanying a photostatic copy of this certificate, as introduced in evidence, is the certificate of the Secretary of the State Road Commission, stating the same to be a correct copy of "an Owner's Policy Certificate issued in the

name of Earl Canterbury and endorsed to cover James Canterbury * * * as household member * * * filed * * * as proof of financial responsibility for James Canterbury." It is apparent from this latter certificate that the Road Commissioner treated the policy and plaintiff in error's certificate as given under the provisions of section 2 of the act, and there is nothing in the record to otherwise show the facts surrounding the offense committed by James.

In the policy itself, the name of James Canterbury appears only in an indorsement attached thereto which deletes paragraph VII, relating to the "Use of Other Private Passenger Automobiles," as to James Canterbury, in view of the the fact that the operator's license issued to James limited his operation to the one automobile described in the policy.

From the foregoing it appears that the policy covered any operation of the vehicle herein involved, by James Canterbury, in fact, the brief of counsel for plaintiff in error so admits: "If James Canterbury had been driving the automobile at the time the plaintiff was injured, the policy would have covered the accident * * *." Such coverage would necessarily be based upon the operation of the vehicle with the permission of the owner and named insured, Earl Canterbury, in view of the provisions of section 2, hereinbefore referred to, and the policy itself. In paragraph V of the "Additional Insuring Agreements" in the policy, it is stated that the operation of the vehicle is covered as to public liability, if, among other conditions, "the actual use is with the permission of the named insured." Although the word "insured" without further qualification should apply to any person entitled to protection under the policy, including a "named insured," the latter term can apply only to the person named as the insured. *Madison* v. *Steller*, 226 Wis. 86, 275 N. W. 703. As hereinbefore pointed out, Earl Canterbury was the named insured and James' name does not appear in the policy, except in the indorsement deleting paragraph VII as to him.

In section 14 of the Act, it is provided that the "liability of the insurance carrier * * * shall become absolute whenever loss or damage covered by such policy occurs," and further that the policy, the written application, if any, and any indorsement which does not conflict with the provisions of the act shall constitute the entire contract between the parties. Every motor vehicle liability policy under the act becomes subject to these provisions whether or not contained therein. Code, 17-20-14. "Named Insured," as used in this policy, can refer to but one person, Earl Canterbury, and since the record includes his undisputed testimony that he did not give Coffman permission to operate the automobile, we must hold that the actual use thereof at the time of the accident was without the permission of the named insured. Because Earl's testimony on this point is undisputed, the lower court did not err in refusing defendant in error's instruction No. 1, which, as originally offered, would have submitted to the jury the question of whether Coffman was driving with Earl's permission. This refusal was a cross-assignment of error.

Otherwise, there can be no recovery in this action. We find nothing in the act which would warrant extension of the policy terms and as stated, section 2 of the act authorized this type of coverage for a member of the household who is not the owner of a motor vehicle. On the question of ownership, it may be true that James made payment for the car in question, but this fact can not operate to make James the "named insured." Note also the statement contained in "Item 5" of the policy: "The named insured is the sole owner of the automobile."

The case of *Eagon v. Woolard,* 122 W. Va. 565, 11 S. E. 2d 257, 135 A. L. R. 970, cited by defendant in error, does not apply to this case, in our opinion. The "family car doctrine" is not applicable to the facts herein, and, even if such facts did justify its application, the principles of the *Eagon* case, based upon direction and control of the driver by the member of the family in charge of the car, would find no support herein. Though it can be asserted with

considerable force that James Canterbury by reason of his "passed out" condition gave Coffman implied permission to operate the car, the elements of direction and control would necessarily be lacking. *Cain* v. *American Policyholders Ins. Co.*, 120 Conn. 645, 183 A. 403.

For the reasons assigned, the judgment of the Circuit Court of Fayette County is reversed, the verdict set aside, and the case is remanded for a new trial.

<em>Reversed and remanded.</em>

KENNA, JUDGE, dissenting:

I do not agree that the protection of James Canterbury in the event that the accident had occurred when he was operating the machine would necessarily rest upon the fact that he was doing so with the permission of the named insured, meaning Earl Canterbury. In my opinion, that conclusion can be arrived at only by entirely disregarding the certificate filed by the defendant company with the State Road Commission's Safety Responsibility Department stating that the purpose of the policy certified to have been issued was to "relieve a household member or an employee who is not a motor vehicle owner," naming James Canterbury. The insurance company was fully informed of the fact that the policy was to be given in compliance with the requirements of Code, 17-20-5, to the effect that a driver's license cancelled for cause may be reinstated upon the furnishing of proof of financial responsibility by the giving of bond or the issuance of "a motor vehicle liability policy" for the benefit of *the person furnishing such proof* "and *named as the insured.*" Certainly the terms of the act requiring the policy and defining the coverage are to be read into a contract of insurance knowingly given under the act, in order to receive the benefit of its provisions, (*Guzenfield* v. *Liberty Mut. Ins. Co.*, 286 Mass. 133, 190 N. E. 23) regardless of form or whether the person furnishing the proof of financial responsibility is, as the act requires, *named as the insured* in the body of the policy, or whether his name

appears by indorsement thereon. I am, therefore, of the opinion that James Canterbury is, under the circumstances clearly shown by the record before us, to be regarded as a named insured and that Coffman at the time of the accident was operating the car with his permission, circumstantially, if not expressly, shown. I do not believe that the policy being worded so that the named insured is described as the "sole owner" of the car covered, should be permitted to interfere with the intended compliance with the act. If the requirements of the act are to be read into the policy, certainly they should not be construed as favoring the insurer, though otherwise there might be more than one named insured.

Furthermore, I am of the opinion, conceding that Earl Canterbury is to be regarded as the sole named insured, that even then there is testimony sufficient to go to the jury on the question of whether at the time of the accident, Coffman was operating the automobile with his permission, impliedly given.

In Massachusetts, they have what is commonly known as a compulsory motor vehicle insurance act, and while the legal questions that arise thereunder, of course, are not identical with those which arise under our financial responsibility act, they are closely enough akin to make their analogy of reasoning extremely persuasive.

In the case of *Boyer* v. *Massachusetts Bonding & Insurance Co.*, (1931) 277 Mass. 359, 178 N. E. 523, the insurance company was sued in chancery to recover the amount of a judgment in an action for death by wrongful act against the driver of the automobile described in the insurance policy, who was not the named insured. Charles F. Brown, the named insured to whom the policy was issued, lived at Matapan, Massachusetts. His son, William H. Brown, admittedly with his permission, took the car from there to New York City. In New York, William H. Brown, with, he testified, the permission of his father, turned the car over to Chester Carter, an employee of his, to use on his vacation and to leave with his, Carter's, father's family for use and sale. The Carter home was at

Methuen, New York. At the time of the accident, the car was being driven by Lloyd Carter for the purpose of taking Edwin F. Carter (his father) and two others to work. The trial chancellor held that William H. Brown had the unrestricted use and custody of the car, and that he had turned it over to Edwin F. Carter with the permission of the named assured, his father, and that Lloyd Carter was driving it under the control and direction of Edwin F. Carter, who, therefore, was operating the car with the permission of the named insured, Charles F. Brown. To restate this rather complicated bailment, Charles S. Brown owned the automobile and was the named assured; he turned the car over to his son, William H. Brown, as an unrestricted bailee, with power to sell, with the permission of the named assured; William H. Brown delivered the car to Chester Carter to be used and left at his father's house for sale and use; the Carter father was a passenger in the car, but not driving, at the time of the accident. It will be seen that in this case there were three distinct transfers of possession: from the named insured to his son, from that son to Chester Carter, and from Chester Carter to his father, Edwin L. Carter. It will also be noted that at the time of the accident, the car was not being driven by the final bailee, but by his son, Lloyd Carter, Edwin L. Carter being a passenger. The conclusion of the court was that, under these circumstances, the automobile was being operated with the implied consent of the named insured, and a recovery under the policy was allowed.

*Guzenfield v. Liberty Mutual Insurance Co.*, (1934) 286 Mass. 133, 190 N. E. 23, 24, was a chancery proceeding to recover under a compulsory insurance policy the amount of a judgment recovered by one Meade, the policy running in the name of Meade's employer, Metropolitan Furniture Company. Under the terms of the policy, the omnibus coverage provision was restricted to the operation of the vehicle with the express or implied consent of the named insured. The insured had admittedly a definite rule against the operation of its automobile by persons

other than its employees, so that at the time of the accident during business hours when the car was being driven by a woman friend of Meade's learning to drive, he being a passenger, no inference of the assured's permission could arise. The Massachusetts Supreme Court, however, applying as controlling the terms of the Massachusetts statute, held that its effect was to make not only the owner the assured, but to include in that category "any person responsible for the operation of the insured's (owner's) motor vehicle with his express or implied consent, * * *," stating: "In requiring the policy—a condition of valid registration—to cover not only the owner, but also anyone responsible to him in its use, contemplated that the liability of the insurer should, so to speak, run with the car unaffected by the owner's action unless *its presence on the public ways was without his sanction.*" (Italics mine.) A recovery was sustained.

In the case of *Moschella* v. *Kilderry*, (1935) 290 Mass. 62, 194 N. E. 728, it was held that the Massachusetts compulsory insurance act did not apply where the husband of the car owner, in her presence and with her acquiescence, loaned the automobile to a neighbor without granting authority to transfer its custody and control to another, and that permission to use by itself did not include the power to transfer that permission, even though the bailee was riding in the automobile when the accident occurred, as in the *Boyer* case.

In *Woznicki* v. *Travelers Insurance Co.,* (1938) 299 Mass. 244, 12 N. E. 2d 876, the owner and named assured had loaned his car to a neighbor with its full use and custody, but with neither express nor implied authority to transfer the custody to another. While using the car, the neighbor picked up two acquaintances and a woman friend and drove to a small town where they spent some little time, changing seats when they started back, so that the operation of the car upon the return trip fell to a man who had had no contact, direct or indirect, with the named assured. The accident occurred after the change in the operator of the automobile had taken place. The trial court decree

denying recovery was affirmed by the supreme court, the car not being driven at the time of the accident by a person with the insured's express or implied consent.

The foregoing cases being based upon the construction of a Massachusetts statute and being only persuasive are cited mainly for the purpose of illustrating that the provisions of a policy of insurance given in compliance with a statutory requirement are inclusive of the affecting terms of the statute, the statutory provisions controlling even when they are in conflict with the terms of the policy. Beyond this it is of interest to note that the Massachusetts cases apparently turn upon the question of whether the named insured has turned the custody of the automobile over to another with the authority to transfer that custody to a third person, that being his right under the Massachusetts act, or has delivered the car to another without that authority, a situation to which the act does not apply.

In the case of *Monroe* v. *Heard* (1936) (La. App.), 168 So. 519, the Supreme Court of Louisiana held that the omnibus coverage clause does not include a person to whom the operation of the vehicle is entrusted by a borrower thereof, but it went further and also held that the testimony should have been submitted to the jury on the theory that the borrower, having the custody and control, by permitting another person to drive the vehicle did not necessarily surrender the custody or operation thereof to the driver, but retained it, the manual control being under his supervision. As holding that the bailee of an automobile, as such, has no authority to turn over the custody and control of an automobile to another so as to constitute that other "additional insured" under the omnibus provisions of the Wisconsin statute, although if the insured has given authority or approval to the transfer of control, the insurer is liable, see the case of *Locke* v. *General Accident, Fire & Life Assurance Corp.* (1938), 227 Wis. 489, 279 N. W. 55.

The Supreme Court of Appeals of Virginia in the case of *Hinton* v. *Indemnity Insurance Company of North*

*America* (1940), 175 Va. 205, 8 S. E. 2d 279, holds that under the omnibus clause of a statute, the permission of the assured may be shown to have been either express or implied, and that implied permission is not confined to affirmative action, but may rest upon lack of its negation under circumstances signifying consent.

For citations relating in general to the omnibus coverage clause, see annotations in 106 A. L. R. 1251, and 126 A. L. R. 544.

For the foregoing reasons I am of the opinion that there is ample proof to sustain the contention that at the time of the accident Coffman was driving with the implied permission of James Canterbury and that, as a matter of law under Code, 17-20-5, James, as the named insured, had the direct right to grant Coffman permission to drive or, as a matter of fact, James Canterbury was impliedly authorized by Earl Canterbury to grant that permission. Therefore, I would affirm the judgment of the circuit court.

Judge Rose joins in this dissent.