## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

### V.

## GEICO INDEMNITY CO., ET AL.

Record No. 900841

March 1, 1991

Present: All the Justices

*John G. Crandley (Preston, Wilson & Crandley*, on brief), for appellant.

*Donnell P. Davis (Furniss, Davis, Rashkind and Saunders*, on brief), for appellees Geico Indemnity Company and Shawn Patrick Payton.

No brief or argument for appellee Charles B. Wallace.

JUSTICE LACY delivered the opinion of the Court.

In this appeal we consider whether a driver may be deemed to have the implied consent of the named insured to use a vehicle under emergency circumstances.

State Farm Mutual Automobile Insurance Company (State Farm) issued an automobile liability policy to Edwin H. Jones, Jr. on a vehicle owned by Susan Jones, his wife. The Joneses' daughter, Jenny, was given general permission to drive the vehicle but her parents expressly prohibited her from allowing any other person to drive the car.

On July 15, 1988, Jenny drove the car to Shawn Payton's home. After picking up Shawn, Jenny drove to Rob Jackson's home. Sometime thereafter, Jenny, Shawn, Rob, Kenny, who was a friend, and Kenny's son left Rob's home to pick up Rob's and Kenny's paychecks. Jenny drove the car. After driving about one-half mile, Jenny said that she felt sick and nauseated and had cramps. She drove the automobile over to the side of the road and asked Shawn to drive.

The trip to pick up the paychecks was resumed with Shawn operating the car. Approximately two miles before the group reached their destination, they were involved in an accident with another car, which resulted in slight damage to both vehicles. Following the accident, Jenny, Shawn, and the other passengers returned to Rob's home in the Joneses' car, although it is not clear who drove the car. Later, Jenny drove the car to Shawn's home and then back to her home.

Because Shawn planned to pay for the damage to the other vehicle, neither Jenny nor Shawn reported the accident to Jenny's

parents. Shawn testified that he was afraid he would get in trouble if he told the Joneses about the incident. Approximately five weeks later, however, the driver of the other vehicle contacted Shawn's insurance company, Geico Indemnity Company (Geico), and the Joneses' liability carrier, State Farm. At this point, Shawn and Jenny disclosed the circumstances of the accident to Mrs. Jones.

Shawn Payton and Geico (collectively Geico) together filed an action against State Farm seeking a declaratory judgment that Shawn was entitled to coverage as a permissive user of the automobile under the State Farm automobile liability policy issued on the Joneses' vehicle. State Farm maintained that Shawn was not a permissive user and, therefore, was not entitled to its coverage.

A jury was empaneled and a hearing was held on February 12, 1990. At the close of Geico's case, State Farm moved the court to strike the evidence and to enter summary judgment in its favor on the ground that Geico had failed to establish a *prima facie* case of coverage. The trial court denied this motion. State Farm did not present any evidence. Finding no conflict in the evidence, the court dismissed the jury and held that Shawn Payton was a permissive user of the Joneses' automobile at the time of the July 15, 1988 accident and, therefore, was entitled to coverage under the State Farm liability policy issued on the automobile.

State Farm raises two issues on appeal: first, whether State Farm was entitled to a judgment as a matter of law because Geico's evidence was insufficient to establish a *prima facie* case of coverage under the State Farm policy; and second, whether the evidence presented questions of fact which should have been submitted to the jury. We consider these issues in order.

I

Virginia Code § 38.2-2204, the omnibus clause, requires that an automobile liability insurance policy provide coverage for a person who is "using" a motor vehicle "with the express or implied consent of the named insured." In interpreting this provision we have rejected the broad interpretation held by some states that express permission to use the vehicle for one purpose implies permission for all other purposes. *State Farm Mut. Auto. Ins. Co.* v. *Cook*, 186 Va. 658, 665, 43 S.E.2d 863, 866 (1947). Nevertheless, we have repeatedly held that the omnibus clause

is remedial and must be liberally interpreted to subserve the clear public policy reflected in it, which is to broaden the coverage of automobile liability policies. In defining "implied permission", and applying it to the facts of the many cases we have had, this court has been liberal in its interpretation and application, and has gone far in holding insurance carriers liable.

*Fidelity & Casualty Co.* v. *Harlow*, 191 Va. 64, 68-69, 59 S.E.2d 872, 874 (1950).

■ Generally, coverage under the omnibus clause would not extend beyond the first permittee when the named insured has expressly prohibited operation of the vehicle by another. This is the first instance in which we consider an exception to this general rule based on circumstances that required the first permittee to transfer operation of the vehicle to another. Both parties agree that under emergency circumstances such an exception is appropriate and should support a finding of implied consent by the named insured, thereby qualifying the substitute driver for insurance coverage as a permissive user under the omnibus clause. While the parties concur in urging us to adopt an emergency circumstances exception, the parties disagree as to the factors which must be shown to support the exception and whether, in this case, the evidence established the appropriate factors.

As this is a case of first impression in Virginia, the parties have referred to various authorities and cases from other jurisdictions in support of their positions. The cited scholarly authorities state that coverage under an omnibus clause can be sustained on the basis of implied permission when emergency conditions require a second permittee to operate a vehicle despite an express prohibition to the contrary. 6C J. Appleman, Insurance Law and Practice (Buckley ed. 1979) § 4361; 7 Am. Jur. 2d, *Automobile Insurance* § 259 (1980); Annotation, *Omnibus Clause of Automobile Liability Policy as Covering Accidents Caused by Third Person Who is Using Car with Consent of Permittee of Named Insured*, 4 A.L.R.3d 66-75 (1965).

Emergency circumstances have also been recognized as an exception to the general rule. *Hopson* v. *Shelby Mut. Casualty Co.*, 203 F.2d 434 (4th Cir. 1953); *Farmers Ins. Co.* v. *Schiller*, 226 Kan. 155, 597 P.2d 238 (1979); *Devall* v. *State Farm Mut. Ins. Co.*, 249 So.2d 282 (La. Ct. App. 1971); *Brooks* v. *Delta Fire &*

*Casualty Co.*, 82 So.2d 55 (La. Ct. App. 1955); *Mullin* v. *Fidelity & Casualty Co.*, 271 Minn. 551, 136 N.W.2d 613 (1965). As the Fourth Circuit Court of Appeals has said in *Hopson,*

> Indeed, it is not difficult to conceive of a situation partaking of emergency aspects which might well operate to suspend the prohibition, especially if the use being made of the car at the time was in furtherance of the purposes of the initial entrustment.

203 F.2d at 439.

■ We agree that emergency circumstances warrant an appropriate exception to the general rule and would support a finding of implied permission by the named insured for purposes of coverage under the omnibus clause. Automobile insurance statutes are designed to provide protection for members of the public who may suffer personal injuries or property damages in automobile accidents. If a driver becomes incapacitated for some reason, concerns over whether a subsequent driver would be covered by insurance should not be a factor in the decision to place a qualified, able driver behind the wheel. Adopting an emergency circumstances exception furthers the statutory goal of protecting members of the public from both physical and financial harm.

■ Next, we turn to the elements which must be shown to support the emergency circumstances exception, and whether they were established in this case. The definition of emergency which we have adopted in other cases is equally appropriate here: "an unforeseen combination of circumstances or the resulting state that calls for immediate action." *DuVal* v. *Virginia Elec. & Power Co.*, 216 Va. 226, 228, 217 S.E.2d 844, 846 (1975); *City of Portsmouth* v. *City of Chesapeake*, 205 Va. 259, 266, 136 S.E.2d 817, 823 (1964). There is no requirement that the "combination of circumstances" be a life threatening event, but mere convenience will not activate the exception. The facts of each case must be examined to determine whether the reason for the incapacity of the permittee was unforeseen and a substitution of drivers was required. Given the safety aspects involved in this type of situation, the driver's evaluation of his or her own ability to drive, while not demonstrative, is probative of the need for a replacement driver. The remedial purpose of the omnibus clause is served by fostering drivers' decisions to insure the safe operation of vehicles on the

roadways. The ultimate issue, however, is whether the driver acted as a reasonable person under the circumstances.

State Farm proposes that, for the exception to apply, an additional criterion must be met—the operation of the vehicle must be for the benefit of the first permittee "in connection with the emergency." In other words, if, after switching drivers, the vehicle is not driven for a purpose which is directly responsive to the first permittee's emergency condition, the emergency circumstances exception will not apply.

In support of this criterion, State Farm relies solely on the A.L.R. Annotation, *supra*, at 66-75, and the cases cited therein. Section 12, subsection (c) of the Annotation, entitled "Emergency situation," addresses whether the named insured's permission to a second permittee would be implied in the face of an express prohibition against the original permittee allowing another to drive, where the "first permittee was a passenger or benefited" and the "second permittee's driving was occasioned by an emergency or a situation involving elements of urgency or necessity." *Id.* at 74. Neither this premise nor the two cases cited in the Annotation require or discuss the criterion urged by State Farm.

Some courts, in considering an emergency exception, have required a finding that the second permittee's operation of the vehicle benefited either the named insured or the first permittee, but have held that the requisite benefits existed in the mere transfer of driving responsibilities in the face of the incapacitating circumstances. *Farm Bureau Mut. Ins. Co.* v. *Hmelevsky*, 97 Idaho 46, 51, 539 P.2d 598, 603 (1975); *Brooks*, 82 So.2d at 58; *Maryland Indem. Ins. Co.* v. *Kornke*, 21 Md. App. 178, 193, 319 A.2d 603, 612 (1974). Even in the cases where coverage was denied, denial was based on reasons such as an insufficient factual basis to support an emergency circumstance exception, *State Farm Mut. Auto. Ins. Co.* v. *Liberty Mut. Ins. Co.*, 238 F.Supp. 141, 144 (W.D.Va. 1965); *Schiller*, 226 Kan. at 160-61, 597 P.2d at 242, *Devall*, 249 So.2d at 286-87, or the failure to meet legal principles of agency regarding an emergency which were pled by the proponent of coverage, *Prisuda* v. *General Casualty Co. of America*, 272 Wis. 41, 50-51, 74 N.W.2d 777, 782 (1956). We found no case, whether sustaining or denying coverage, that required the second driver to use the vehicle only in a manner calculated to eliminate or alleviate the incapacitating condition of the first permittee, as State Farm urges here.

■ In our view, the nature of the emergency will dictate the second permittee's subsequent operation of the vehicle. Not all emergencies require a trip to a medical facility or to a destination other than that originally intended. For example, the loss of a contact lens by a driver might very well require that another person drive the car. Diversion of the trip's original destination in order to secure another lens, however, would not be required. As found by the courts in the cases cited above, continuing the trip as the first permittee originally intended may be reasonable as well as beneficial to such permittee. The subsequent use or destination of the vehicle may be probative evidence as to whether the first permittee was faced with circumstances requiring a change of drivers. We will not, however, impose a requirement that, in order to invoke the emergency circumstances exception, the operation of the vehicle following the transfer must be calculated to alleviate the original driver's incapacitating circumstances.

■ While the second permittee's operation of the vehicle is not limited to alleviating the emergency, the implied permission to use the vehicle resulting from the emergency exception will not continue indefinitely. The implied permission given the second permittee to operate the vehicle terminates when the emergency subsides. Therefore, if the evidence shows that the accident occurred after the emergency circumstances ceased to exist, the named insured's consent will not be implied for the second permittee's operation of the vehicle at that time.

■ In summary, we hold that if a second permittee demonstrates by credible evidence that, at the time of the accident, he was required to operate the vehicle as a result of an unforeseen combination of circumstances affecting the first permittee's ability to drive he has established a *prima facie* case for the application of the emergency circumstances exception. Here, Geico's evidence consisted of uncontradicted testimony that Jenny was ill, that she felt she could not drive, and that she requested Shawn to drive. The accident occurred shortly thereafter, and there was no testimony that the incapacitating condition had subsided at the time of the accident. This evidence was sufficient to qualify Shawn's operation of the Joneses' vehicle for the emergency circumstances exception. The trial court did not err in denying State Farm's motion to strike Geico's evidence.

## II

In State Farm's second assignment of error, it complains that even if Geico established a *prima facie* case, the evidence presented questions of fact which should have been resolved by the jury. The trial court held that, as there was no conflict in the evidence that Jenny was ill and that Shawn was driving only because of Jenny's illness, there were no factual issues for jury determination. We disagree.

The trier of fact "may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record, even though such witnesses are interested in the outcome of the case." *Cheatham* v. *Gregory*, 227 Va. 1, 4, 313 S.E.2d 368, 370 (1984) (citations omitted). However, the trier of fact has the right and responsibility to weigh the evidence and determine the credibility of the witnesses. Only when "reasonable men should not differ as to the reasonable inferences and proper conclusions to be drawn from the evidence" does this determination become a question of law properly determined by the trial court. *Schutt* v. *Brockwell*, 214 Va. 38, 41, 196 S.E.2d 921, 924 (1973).

Our review of the record indicates that, while the testimony may have been uncontradicted and while certain facts may not have been disputed, those facts could support more than one inference or conclusion. For example, Shawn's failure to report the accident for fear of getting in trouble might imply that he was afraid solely because the accident occurred or, in the alternative, because he knew he should not have been driving. Similarly, the fact that the trip to get paychecks was continued after the transfer of drivers, and the possibility that Jenny herself may have driven the car away from the scene of the accident, could support either the inference that Jenny's incapacity was transitory or the inference that Jenny, in fact, was not sick, and that the change in drivers occurred for some other reason. These conflicting inferences were sufficient to present issues of fact which should have been resolved by the jury.

Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*