500                                46 Mass. App. Ct. 500 (1999)

Hingham Mutual Fire Insurance Company *v.* Niagara Fire Insurance Company.

## Hingham Mutual Fire Insurance Company *vs.* Niagara Fire Insurance Company.

No. 97-P-0825.

Plymouth. December 15, 1998. - March 19, 1999.

Present: Brown, Porada, & Greenberg, JJ.

*Contract,* Insurance. *Insurance,* Motor vehicle insurance, Homeowner's insurance, Insurer's obligation to defend, Construction of policy, Disclaimer of liability. *Motor Vehicle,* Operation, Permission to operate. *Words,* "Operation."

In a tort action, an insurer under a policy of motor vehicle insurance had a duty to defend a passenger in its insured's vehicle, in circumstances in which the complaint alleged, and the insurer had other information indicating, that the passenger grabbed the steering wheel of the car in response to a perceived emergency, which was sufficient to support the conclusion that the driver would have consented to the passenger's "use" of the vehicle within the meaning of the applicable policy. [502-503]

Whether the actions of a passenger in grabbing the steering wheel of a motor vehicle in reaction to a perceived emergency constituted "operation" of the motor vehicle within the meaning of an exclusion in a policy of homeowner's insurance was ambiguous, and the policy was interpreted in favor of coverage in the circumstances; the insurer was required to pay its share of costs incurred in successfully defending a tort claim against the passenger. [503-504]

Civil action commenced in the Superior Court Department on May 1, 1995.

The case was heard by *Richard J. Chin,* J., on motions for summary judgment, and entry of final amended judgment was ordered by *Richard F. Connon,* J.

*John D. Boyle* for the defendant.

*Ethan Warren* for the plaintiff.

Porada, J. This is an appeal by two insurance companies over who had the duty to defend an underlying tort action. Hingham Mutual Fire Insurance Company (Hingham) filed a complaint in the Superior Court for declaratory relief seeking contribution or

indemnity from Niagara Fire Insurance Company (Niagara) for legal defense costs incurred in the underlying action. Both parties filed cross motions for summary judgment. A judgment entered in the Superior Court ordering Niagara to pay $31,395.22, one-half of the defense costs incurred by Hingham. Both parties have appealed from this judgment. We affirm the judgment and declare that Niagara shall pay one-half of the defense costs incurred by Hingham.

We state the facts. In the underlying tort action, arising out of a one-car accident, Rebekah Ely and Leah Ely sued Kathleen Crosby (Crosby) for negligence. All three were minors and occupants of the car. At the time of impact, Rebekah Ely was the driver,[1] Leah Ely was a passenger seated in the back seat, and Crosby was a passenger seated in the front seat. The Elys' complaint alleged that Crosby was under the influence of a hallucinogenic drug at all times relevant to their action and that, without warning, Crosby grabbed the steering wheel of the vehicle being driven by Rebekah Ely and turned it to the right while stating that she saw something in the roadway. The complaint stated that, as a result, the vehicle left the roadway and overturned, causing serious injury to all three occupants. The complaint further alleged that at the time Crosby grabbed the wheel there was nothing on the roadway in the path of the vehicle. Crosby was provided a defense to the Elys' action by Hingham under her parents' homeowner's insurance policy. Crosby demanded that Niagara also provide her with a defense under the Elys' motor vehicle liability insurance policy. Niagara refused to do so. The depositions of both Elys taken by Crosby in the tort action revealed that they had no memory of the automobile accident and that Crosby had told them that she grabbed the wheel because the vehicle was drifting off the road. This information was forwarded by Hingham to Niagara with a renewed request, to which Niagara did not respond, that Niagara provide Crosby with a defense in the Elys' action. A jury returned a verdict for Crosby in the tort action. Hingham then filed this action to recover the $62,790.46 in attorney's fees and costs incurred in providing Crosby with a defense on the ground that Niagara had a duty to defend Crosby in the underlying tort action under its motor vehicle liability insurance policy. On appeal, Hingham argues that Niagara should bear the entire cost, and Niagara argues that it should bear none of the costs.

[1]The car was registered in the name of Rebekah's father, Russell Ely.

The principles governing an insurer's duty to defend are well established. An insurer's obligation is "based not only on the facts alleged in the complaint but also on the facts that are known or readily knowable by the insurer." *Desrosiers* v. *Royal Ins. Co. of America*, 393 Mass. 37, 40 (1984), citing *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 167 (1983). If the circumstances alleged within the complaint are reasonably susceptible of an interpretation that they state a claim covered by the policy terms, the insurer must undertake the defense. *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 146-147 (1984). Only a possibility of coverage need be shown. *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. 318, 322 (1991). Applying those principles to the terms of the parties' policies, we now address the issue of who had the duty to defend Crosby in the underlying tort action.

1. *Niagara, the motor vehicle liability insurer.* Niagara argues that the motion judge erred in ordering it to pay one-half of Crosby's defense costs because it had no duty to defend her under the terms of its policy. The pertinent language in the Niagara policy on which it relies is as follows:

> "[W]e will pay damages to people injured or killed by your auto in Massachusetts accidents. . . . We will pay only if you or someone else using your auto with your consent is legally responsible for the accident."

Niagara contends that Crosby's grabbing the wheel, the act which caused the accident, was not a consensual use[2] of the vehicle and, therefore, there is no coverage under its policy. However, in order for there to be coverage, consent need not be express; it can be implied. *Goodney* v. *Smith*, 359 Mass. 749 (1971). See, e.g., G. L. c. 231, § 85C.

The issue presented is whether a perceived emergency by an unlicensed minor, who had ingested a narcotic, which results in her suddenly grabbing the steering wheel causing an accident is sufficient to give rise to implied consent. Although no Massachusetts appellate decision appears to have determined that an emergency situation can confer implied consent, other jurisdictions have so held. See discussion in *State Farm Mut. Auto. Ins. Co.* v. *Geico Indem. Co.*, 241 Va. 326, 330-331 (1991). Here,

---

[2]Niagara concedes that Crosby's grabbing the wheel constitutes use of the vehicle.

Niagara does not contest that an emergency situation can give rise to implied consent but instead argues that the allegations of the complaint do not set forth an emergency situation because, in spite of Crosby's claim that she grabbed the wheel because of something in the roadway, the complaint states there was nothing in the roadway. We reject that argument because even though the complaint alleges there was nothing in the roadway, Crosby's statement, if proved correct, would give rise to an emergency situation from which one could infer that the driver would have conferred consent upon her. In any event, contrary to Niagara's argument, the determination of coverage is not limited solely to the allegations of the complaint. It also is dependent upon what facts Niagara was aware of or that were readily knowable. *Desrosiers* v. *Royal Ins. Co.*, 393 Mass. at 40. Here, Niagara had investigated the accident. Not only had it paid Crosby's claim against the Elys under the Elys' motor vehicle liability policy, but it had been informed that the Elys had stated that Crosby claimed she grabbed the wheel because the car was drifting off the road. Because Crosby's statements set forth circumstances calling for immediate action which are reasonably susceptible of an interpretation that an operator would consent to the passenger's action in those circumstances, we conclude Niagara had a duty to provide Crosby with a defense in the underlying tort action. As noted, only a possibility of coverage need be shown.

2. *Hingham, the homeowner's insurer.* Hingham asserts that the judge erred when he ordered it to share with Niagara the legal defense costs in the tort action. Noting that its policy language excludes coverage for accidents arising out of the "ownership, maintenance, [or] use . . . of motor vehicles . . . operated by . . . an insured," Hingham contends that Crosby's grabbing the steering wheel, whether she acted as the result of taking a hallucinogenic drug, seeing an object in the road, or believing the vehicle was drifting off the road, constitutes operation of the vehicle under the policy. There appears to be no Massachusetts appellate decision which has determined whether the act of grabbing the steering wheel is "operation" of a vehicle as contemplated under the standard homeowner's motor vehicle policy exclusion. Other jurisdictions that have considered this issue have held that the grabbing of a steering wheel by a passenger does not constitute operation but rather interference with the operation of a motor vehicle. *West Bend Mut. Ins. Co.*

v. *Milwaukee Mut. Ins. Co.*, 384 N.W.2d 877, 880 (Minn. 1986). *Harrison* v. *Tomes*, 956 S.W.2d 268, 271 (Mo. 1997) (Limbaugh, J., concurring). *State Farm Mut. Auto. Ins. Co.* v. *White*, 60 Or. App. 666, 670-671 (1982). But see *United States Fire Ins. Co.* v. *United Serv. Auto. Assn.*, 772 S.W.2d 218, 221-222 (Tex. Ct. App. 1989). None of the above cases, however, involved allegations that the passenger's actions were prompted by a perceived emergency.

The law is well settled that " '[e]xclusions from coverage are to be strictly construed,' and any ambiguity in [an] exclusion 'must be construed against the insurer.' " *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 282 (1997), quoting from *Vappi & Co.* v. *Aetna Cas. & Sur. Co.*, 348 Mass. 427, 431 (1965). It is also appropriate to consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." 424 Mass. at 282, quoting from *Trustees of Tufts Univ.* v. *Commercial Union Ins. Co.*, 415 Mass. 844, 849 (1993). We think that "an objectively reasonable insured" would believe that a motor vehicle has only one operator and that is the person who is in charge of the "actual physical handling of the controls of the vehicle." See *Commonwealth* v. *Jordan*, 310 Mass. 85, 86 (1941). While there is no dispute that at the moment of impact Crosby was steering the motor vehicle, steering is only one mechanism that controls the movement of the vehicle. Operation necessarily includes control over all the parts of the car that allow it to move, including, e.g., the engine and brakes. On the other hand, operation may be interpreted to include any voluntary act that controls the movement and direction of the car such as grabbing the steering wheel. See *Williams* v. *Nelson*, 228 Mass. 191, 194-195 (1917). Because the word "operated" may be interpreted in more than one way, we conclude that an ambiguity exists in the policy and the policy should be interpreted in favor of providing coverage. See *Harrison* v. *Tomes*, 956 S.W.2d at 269-270. Accordingly, we are of the opinion that, under the terms of its policy, Hingham must bear one-half of the costs it incurred in defending Crosby.

While the amended judgment could have been more explicit in declaring the rights of the parties, we understand it to have done so, by requiring Niagara to pay Hingham a pro rata share

of Crosby's defense costs. The amended judgment, dated February 25, 1997, is affirmed.

*So ordered.*