619 S.E.2d 165

**Tom COLLINS, Plaintiff
Below, Appellant**

v.

**Karen HEASTER, as Administratrix
for the Estate of David Heaster**

**and**

**John DOE, Defendants Below, Appellees**

No. 31971.

Supreme Court of Appeals of
West Virginia.

Submitted March 23, 2005.

Decided June 21, 2005.

Concurring and Dissenting of Justice
Starcher July 14, 2005.

Roger D. Curry, Amy J. Swisher, Curry & Swisher, PLLC, Fairmont, West Virginia, Attorney for Appellant.

Thomas G. Steele, Steele Law Offices, Clarksburg, West Virginia, Attorney for Appellee Allstate Insurance Company.

BENJAMIN, Justice:

The instant appeal arises from the Circuit Court of Harrison County's November 26, 2003 entry of an order granting Allstate Insurance Company's ["Allstate's] motion to dismiss Appellant's "John Doe" claim insofar as the claim was asserted under a policy of insurance issued by Allstate to its insured, David Heaster. In its order, the circuit court clarified its reasoning supporting a prior order granting summary judgment to Karen Heaster, Administratrix for the Estate of David Heaster, on separate but related claims made by Appellant against Mr. Heaster's estate, in the underlying complaint, and further held that Appellant's complaint alleging negligence on the part of "John Doe" did not properly state a cause of action against Allstate, the Heaster's liability insurer. Having considered the record below, the parties' filings before this Court and the oral argument of counsel, we affirm the circuit court's order.

## I.

## FACTS AND PROCEDURAL HISTORY

On March 7, 2000, a fire occurred at the home of Karen and David Heaster in Stonewood, Harrison County, West Virginia. Appellant Tom Collins responded to the fire scene in connection with his duties as an employee of the Harrison County EMS. Shortly after arriving at the scene, Collins alleges that he was struck by a vehicle owned by David Heaster as it was being moved[1]

---

1. Appellant is not sure whether the vehicle's engine was running or whether it was being pushed

from the proximity of the fire by an unknown person ["John Doe"], presumed to be a neighbor of the Heasters. There were no witnesses to this incident. After allegedly being struck by the vehicle, Appellant proceeded to administer first aid to Karen Heaster upon her removal from the fire. Likewise, Appellant assisted in the treatment and transportation of David Heaster to the hospital after Mr. Heaster was removed from the burning house in cardiac arrest. Mr. Heaster later died as a result of injuries sustained in the fire.

On March 6, 2002, Appellant instituted a civil action in the Circuit Court of Harrison County, West Virginia against Karen Heaster, Administratix for the Estate of David Heaster ["Estate"], and John Doe, for injuries to his "neck, shoulders, arms, and other parts of [his] body" sustained in the March 7, 2000 incident. The complaint alleged:

> John Doe negligently drove a vehicle owned by defendant David Heaster, now deceased, against the plaintiff . . . with the implied consent of Defendant David Heaster . . . [and] negligently failed to exercise reasonable care to prevent the conditions from arising and negligently failed to exercise reasonable care to reduce or eliminate the risk or to warn plaintiff of the conditions, all of which proximately caused the plaintiff to be struck by the vehicle owned by Defendant David Heaster, now deceased, and suffer personal injuries.

A copy of Appellant's complaint was served upon Karen Heaster who timely answered on behalf of the Estate.

After discovery, the Estate moved the circuit court for entry of an order granting summary judgment as to all allegations made directly, or indirectly, against the Estate. The Estate's motion was premised upon an

argument that because there was no evidence that David Heaster or any of his family members were operating the vehicle at the time of the incident or had negligently entrusted the vehicle to anyone, liability could not be imposed upon the Estate under the family purpose doctrine, a negligent entrustment theory or a vicarious liability theory. Further, the Estate argued that there was no authority to permit Appellant to maintain a third-party John Doe claim against the Estate. Instead, the Estate argued, a John Doe claim is statutorily authorized to be asserted against a claimant's own insurance carrier. After Appellant informed the circuit court he had no objection to the motion for summary judgment, the circuit court dismissed all claims advanced against Karen Heaster, Administratrix for the Estate of David Heaster, with prejudice, by order dated December 19, 2002.[2]

Thereafter, on June 2, 2003, Appellant caused a copy of the March 6, 2002 complaint to be served upon John Doe in care of Allstate, the Heaster's insurance carrier, through the West Virginia Secretary of State. Allstate responded by filing a motion to dismiss pursuant to Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure* arguing that West Virginia law does not support the filing of a John Doe claim in the third-party liability context, but instead, limits such claims to those made under a first-party uninsured motorist policy.[3] In response, Appellant agreed that there was no statutory provision authorizing a third-party John Doe action. Appellant responded that the motion to dismiss should be denied because two issues existed for resolution, namely whether he may obtain a judgment against John Doe and whether John Doe had implied consent to operate the Heaster vehicle.

---

or drifting at the time of the alleged incident. Allstate further argues there is a question as to whether *any* vehicle owned by Karen and/or David Heaster was actually involved in this alleged incident. For purposes of this appeal we assume that an incident as described by Appellant did occur. *See State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 776, 461 S.E.2d 516, 522 (1995)(noting that when reviewing motion to dismiss, factual allegations are to be taken in light most favorable to non-moving party).

**2.** The December 19, 2002 Order granting summary judgment noted it omitted detailed findings of fact and conclusions of law because there was no objection to its entry.

**3.** Allstate also noted the lack of authority for Appellant to pursue a John Doe claim under the Estate's liability policy where the claims against the Estate were previously dismissed, with prejudice.

Upon consideration of the parties' filings and the oral argument of counsel, the circuit court granted Allstate's motion to dismiss by order dated November 26, 2003. The circuit court's November 26, 2003 order not only addressed the pending motion to dismiss, but also clarified its rulings with respect to the previous motion for summary judgment made by the Estate. Specifically, the circuit court noted that it had previously considered all implied consent issues and found there was no evidence to support an argument that John Doe had either David or Karen Heaster's express or implied consent to move the vehicle which would, in turn, impose a duty to defend and indemnify John Doe upon Allstate. Moreover, the circuit court noted that the Estate, in its motion for summary judgment, had contended that authority supporting the ability to assert a third party John Doe liability claim for damages did not exist in West Virginia. The circuit court found that Appellant could not recover under the Heasters' uninsured motorist policy with Allstate because he was not an Allstate insured and, further, that he could not recover under the liability portion of the Heaster's policy with Allstate by virtue of the previous, unopposed dismissal of the claims against the Estate. The circuit court's order noted that West Virginia statutorily recognizes John Doe claims as claims against an injured party's own insurance carrier. Appellant appeals the circuit court's November 26, 2003 Order to this Court.

## II.

## STANDARD OF REVIEW

This matter presents to us upon appeal of an order granting Allstate's motion to dismiss. "Appellate review of a circuit court's order granting a motion to dismiss a complaint is de novo." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick*, 194 W.Va. 770, 461 S.E.2d 516 (1995). To the extent the circuit court's November 26, 2003 order may be construed as a summary judgment order because it clarifies the reasoning underlying the circuit court's December 19, 2002 summary judgment order, the review remains *de novo*. *See*, Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d

755 (1994)(holding "[a] circuit court's entry of summary judgment is reviewed de novo."). Moreover, " '[w]here the issue on appeal is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syl. Pt. 2, *Dunlap v. Friedman's Inc.*, 213 W.Va. 394, 582 S.E.2d 841 (2003).

## III.

## DISCUSSION

Under West Virginia's omnibus statute, every policy of motor vehicle liability insurance must contain a provision insuring the named insured and any other person "responsible for the use of or **using the motor vehicle with the consent, expressed or implied, of the named insured** or his or her spouse against liability for death or bodily injury sustained ...as a result of negligence in the operation or use of such vehicle[.]" W. Va.Code § 33–6–31(a) (1998) (emphasis added). In *Universal Underwriters Ins. Co. v. Taylor*, 185 W.Va. 606, 408 S.E.2d 358 (1991), this Court stated:

> The purpose of an omnibus clause in an automobile insurance policy, as this Court recognized in syllabus point 1 of *State Farm Mutual Automobile Insurance Co. v. Allstate Insurance Co.*, 154 W.Va. 448, 175 S.E.2d 478 (1970), is "to extend coverage, in proper circumstances, to any person using the insured vehicle, and to afford greater protection to the public generally ...." Consistent with that purpose, we have recognized that the omnibus clause "is remedial in nature and must be construed liberally so as to provide insurance coverage where possible." *Burr v. Nationwide Mut. Ins. Co.*, 178 W.Va. 398, 359 S.E.2d 626, 632 (1987).

*Taylor*, 185 W.Va. at 608, 408 S.E.2d at 360; *see also, Allstate Ins. Co. v. State Auto. Mut. Ins. Co.*, 178 W.Va. 704, 364 S.E.2d 30 (1987)(finding where liable driver of a motor vehicle is insured under a separate policy of insurance, liability policy covering the vehicle involved in the accident is primarily responsible for damages sustained and driver's indi-

656

vidual policy is excess). Subsequent to the decision in *Taylor*, this Court found that the omnibus statute "contemplates that the named insured must give express or implied permission to the person utilizing his vehicle" before coverage is triggered. *Metropolitan Prop. & Liab. Ins. Co. v. Acord*, 195 W.Va. 444, 449, 465 S.E.2d 901, 906 (1995). Thus, pursuant to West Virginia's omnibus statute, W. Va.Code § 33-6-31(a) (1998), a person must have the permission, express or implied, of the named insured or the insured's spouse to operate or move a motor vehicle before coverage is triggered under a liability policy insuring the vehicle for injuries caused by that person's negligent operation of the vehicle.

Appellant has argued that implied consent should be presumed for John Doe to move an otherwise unoccupied vehicle out of the possible "zone of danger" of a fire. This Court has discussed implied consent in relation to coverage under automobile liability insurance policies on at least two prior occasions. In *State Farm Mutual Automobile Insurance Company v. American Casualty Co.*, 150 W.Va. 435, 146 S.E.2d 842 (1966), the Court held that the driver of a vehicle did not have the named insured's implied permission to operate the vehicle such that coverage would be triggered under the automobile policy covering the vehicle for the driver's actions, reversing the trial court's conclusion that implied permission (or consent) existed. *State Farm*, 150 W.Va. at 451-52, 146 S.E.2d at 851-52. In so doing, the Court held the burden was on the person seeking coverage to prove facts or circumstances from which permission (or consent) may be implied. Syl. Pt. 3, *State Farm*. The automobile accident at issue in *State Farm* occurred when the named insured's vehicle was being operated by a friend of the named insured's son with the son's express permission. Although the named insured had given the driver express permission to operate the vehicle on a prior occasion and the named insured's son had express permission to operate the vehicle on the night in question, the named insured had regularly admonished his son not to permit any other person to operate the vehicle. Hence, the Court noted the son did not have such unrestricted and general permission to

use the vehicle that the son's consent for the driver to operate the vehicle justified a finding of implied permission (or consent) of the named insured. *Id.* at 450-51, at 851-52. Likewise, this Court refused to imply the consent of a named insured for the operation of a vehicle by a friend of the vehicle's regular driver where the regular driver (also an insured under the policy at issue) became intoxicated. *Adkins v. Inland Mut. Ins. Co.*, 124 W.Va. 388, 20 S.E.2d 471 (1942). In *Adkins*, the Court noted the named insured's undisputed testimony that he did not give the friend permission to operate the vehicle at the time in question and rejected an argument that the regular driver's intoxicated condition gave the friend implied permission (or consent) to operate the vehicle. *Adkins*, 124 W.Va. at 393-94, 20 S.E.2d at 473. As these cases demonstrate, there is no historical precedent in West Virginia to support Appellant's "zone of danger" argument in the instant matter.

Moreover, Appellant has not identified for this Court, nor has our independent research uncovered, a decision from any jurisdiction which would support the expansive view of implied consent propounded by Appellant in this matter. Courts in other jurisdictions have recognized that emergencies may, in limited situations, operate to confer implied consent to operate a vehicle upon another person. For example, in *Hingham Mut. Fire Ins. Co. v. Niagara Fire Ins. Co.*, 46 Mass.App.Ct. 500, 707 N.E.2d 390 (1999), the court found that a vehicle's liability insurer had a duty to defend a vehicle's passenger in a tort action arising from a one-car accident caused by the passenger grabbing the steering wheel where the passenger alleged her actions were precipitated by "something in the roadway." *Hingham*, 707 N.E.2d at 392. The court noted the passenger's statements regarding an obstacle in the roadway set forth circumstances calling for immediate action which were reasonably susceptible of an interpretation that the vehicle's operator would consent to the passenger's actions. *Id.* at 392-93. Similarly, in *State Farm Mut. Auto. Ins. Co. v. Geico Indem. Co.*, 241 Va. 326, 402 S.E.2d 21 (1991), the Supreme Court of Virginia held that an exception to the

general rule that a named insured must consent to a person's operation of a vehicle for purposes of coverage under the omnibus statute provisions of an automobile liability policy is appropriate in emergency circumstances such as where the driver has become incapacitated. *State Farm*, 402 S.E.2d at 23. In *State Farm*, although the vehicle owners' daughter had general permission to drive the vehicle, she was expressly prohibited from allowing anyone else to operate it. *Id.* at 21. One evening, the daughter became ill while operating the vehicle and asked a passenger to drive. *Id.* Subsequently, the vehicle was involved in an accident. *Id.* The court noted that "[i]f a driver becomes incapacitated for some reason, concerns over whether a subsequent driver would be covered by insurance should not be a factor in the decision to place a qualified, able driver behind the wheel." *Id.* at 23. It is noteworthy that these limited examples of "implied" consent from other jurisdictions involve circumstances where immediate action was necessary to avoid serious harm or risk of harm to the insured or another occupant of the vehicle.

■ Historically, this Court has rejected driver intoxication as justification for implied consent. *See Adkins v. Inland Mut. Ins. Co.,* 124 W.Va. 388, 20 S.E.2d 471 (1942) Notwithstanding the decision in *Adkins,* this Court tends to agree that during certain extreme emergencies, such as driver incapacitation or the imminent risk of serious bodily harm to an occupant of the vehicle, circumstances may be sufficient to presume the implied consent of a vehicle's owner such that the substitute driver may be deemed a permissive user covered by the vehicle's liability policy pursuant to the provisions of West Virginia's omnibus statute, W. Va. Code § 33–6–31(a) (1998). However, such a situation is not currently before this Court and, therefore, we need not conclusively decide the issue. Instead, the circumstance presented to this Court is that of a John Doe moving an unoccupied vehicle out of the possible "zone of danger" of a house fire. This Court does not deem such a circumstance sufficient to rise to the level of an emergency justifying the presumption of the vehicle owner's implied consent for John Doe's actions. Accordingly, this Court holds where a person

moves an otherwise unoccupied vehicle from the "zone of danger" of a fire, the implied consent of the vehicle's owner is not presumed such that liability coverage under the policy of insurance insuring the vehicle would be triggered to cover that person's negligent operation of the vehicle pursuant to the provisions of the omnibus statute, W. Va.Code § 33–6–31(a)(1998). Thus, as the circuit court found no evidence to support an argument that either David or Karen Heaster expressly or impliedly consented to John Doe's operation of the motor vehicle before granting summary judgment to the Estate, and we have found, as a matter of law, that implied consent cannot be inferred from the circumstances presented, the circuit court did not err in granting Allstate's motion to dismiss.

■ We now turn to the scope of permissible John Doe claims arising from automobile accidents under West Virginia law. West Virginia law requires every policy of automobile insurance issued or delivered in this State to include a minimum amount of uninsured motorist coverage payable to the insured as damages the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle. W. Va. Code § 33–6–31(b) (1998). Additionally, the West Virginia Legislature has specifically authorized the filing of claims to recover uninsured motorist benefits where the owner or operator of a vehicle causing bodily injury is unknown and has set forth the parameters for proceeding against a John Doe defendant. W. Va.Code § 33–6–31(e) (1998). By defining claims against an unknown owner or operator of a motor vehicle as claims under the uninsured person's uninsured motorist provisions of motor vehicle policy of insurance, the Legislature has demonstrated an intent to limit the ability to assert a claim against a John Doe defendant arising from a motor vehicle accident to claims against an injured person's own uninsured motorist policy of insurance. As the Legislature has spoken on this issue, this Court will not supercede legislative intent by recognizing John Doe claims where the Legislature has chosen not to do so. Thus, we hold that, under West Virginia law, where a person alleges injuries

caused by a John Doe defendant in a motor vehicle accident, recovery for damages caused by the John Doe is limited to recovery under the injured person's own uninsured motorist policy of insurance. As Appellant is not an insured under the uninsured motorist provisions of the policy of insurance issued by Allstate to the Heasters, the complaint against John Doe fails to state a cause of action against Allstate and the circuit court properly granted Allstate's motion to dismiss.

## IV.

## CONCLUSION

■ Based upon the foregoing discussion, we conclude that the Circuit Court of Harrison County did not err in granting Allstate's motion to dismiss. Under West Virginia law, a person operating a motor vehicle must have the consent, express or implied, of the vehicle's owner or the owner's spouse before coverage is afforded to the operator under the motor vehicle liability insurance policy insuring the vehicle. Consent is not deemed implied where a John Doe negligently moves an otherwise unoccupied vehicle out of the "zone of danger" of a fire. In circumstances where a party is injured by a John Doe's negligent operation of a motor vehicle, the injured party is limited to a claim against his or her own uninsured motorist policy of insurance.

Affirmed

Chief Justice ALBRIGHT dissents and reserves the right to file a dissenting opinion.

Justice STARCHER concurs, in part, dissents, in part, and reverses the right to file a separate opinion.

ALBRIGHT, Chief Justice, dissenting:

Because I think the majority has made new law that is purely and simply bad public policy, I must respectfully dissent. The facts of this case indicate that a John Doe moved the insured's vehicle from the so-called "zone of danger." No one disputes that the vehicle was in sufficient proximity to the fire such that it was reasonable to conclude that the automobile could have been subjected to the flames of the house fire were it not moved. Yet, the majority somehow concludes that a Good Samaritan who decided to move the vehicle out of the "zone of danger" did not have the implied consent of the vehicle's owner to move such vehicle under the meaning of this state's omnibus statute. See W.Va.Code § 33–6–31(a) (requiring that all motor vehicle insurance policies contain provision insuring named insured and all persons "responsible for the use of or using the motor vehicle with the consent, expressed or implied, of the named insured or his or her spouse against liability for death or bodily injury").

As a matter of public policy, it makes sense to interpret the omnibus clause language concerning implied consent that is at issue in this case in such a fashion that the owner's consent is implied in a situation where a Good Samaritan undertakes to move an insured's vehicle out of the "zone of danger" due to a raging fire. Had the vehicle at issue in this case actually caught on fire, the level of danger presented at the scene would have been exponentially increased due to the potential for the vehicle's fuel tank to explode and the extent of damages suffered by those present at the scene would have been greatly enhanced. Consequently, discouraging a concerned citizen from performing an act that has as its goal the limiting of additional property loss makes no sense given the objectives of the omnibus coverage. See Universal Underwriters Ins. Co. v. Taylor, 185 W.Va. 606, 611, 408 S.E.2d 358, 363 (1991) (recognizing that legislative objective that underlies statutorily-required omnibus clause is to "maximize insurance coverage for the greater protection of the public").

Just as I disagree with the result reached by the majority with regard to the issue of implied consent, I similarly disagree that the insurance proceeds available for injuries caused by a John Doe in a motor vehicle accident should be limited to the uninsured benefits available under the injured person's uninsured motorist coverage. This result only serves to punish an innocent victim for the unintended actions of a John Doe citizen whose actions were unquestionably laudable in purpose. The injured party should be

permitted to recover damages under the coverages provided by the insured's automobile policy in consonance with the policy objective of " 'assuring that all persons wrongfully injured have financially responsible persons to look to for damages.' " *See Taylor*, 185 W.Va. at 612, 408 S.E.2d at 364 (quoting *Odolecki v. Hartford Accident & Indem. Co.*, 55 N.J. 542, 264 A.2d 38, 42 (1970)).

For the foregoing reasons, I respectfully dissent.

STARCHER, J., concurring, in part, and dissenting, in part:

(Filed July 14, 2005)

I grudgingly concur with the outcome of this case. The facts of this case are certainly unique, but I think the outcome is correct for this reason: the insurance company could not have predicted, and therefore insured against, this risk. I just do not think it likely that a total stranger, without express or implied permission, is going to jump in a car next to a burning building, move the car and while doing so run over a fireman responding to the fire, and then flee. I therefore do not think, under these circumstances, that the insurance company is responsible for providing liability coverage for the total stranger.

I dissent, however, to the draftsmanship of Syllabus Point 4 that states:

> Where a person alleges injuries caused by a John Doe defendant in a motor vehicle accident, recovery for damages caused by the John Doe is limited to recovery under the insured person's own uninsured motorist policy of insurance.

This rule is seems to be backwards from what the majority intended to say. Instead of saying a plaintiff can't make a John Doe claim against a third-party tortfeasor's uninsured motorist coverage—which is the question before the Court—Syllabus Point 4 inverts the answer and says a plaintiff can ONLY collect damages from his own uninsured motorist coverage. This language is therefore likely to be fertile soil in which crafty lawyers will sow litigation.

I believe that Syllabus Point 4 should have read:

Where a person alleges injuries caused in a collision with a motor vehicle driven by a "John Doe" defendant who did not have the express or implied permission of the named insured or the insured's spouse to operate the motor vehicle, the person may not recover damages under the uninsured motorist policy of insurance on that motor vehicle.

With this language the majority opinion would have reached the same result, but without the likely mischief.

I therefore respectfully concur, in part, and dissent, in part.